## Wilson *v.* Equitable Gas Co., Appellant.

[Marked to be reported.]

*Eminent domain—Market value—Evidence—Opinion of witnesses based on division into building lots.*

In estimating the market value of land taken under right of eminent domain everything which gives it intrinsic value is a proper element for consideration. And it is competent, therefore, to show that land used as a farm was ripe for building improvements or for any other purpose that enhanced its value.

*Striking out evidence—Practice, C. P.—Review.*

The appellant at the trial moved to strike out all the testimony of certain witnesses, where only part of the testimony was objected to, which was denied and bill sealed by the court. In the assignments of error appellant picked out certain portions only and assigned for error the refusal of the court to strike out such portions. *Held,* that the trial judge was justified in his refusal and would not be reversed.

Argued Nov. 10, 1892. Appeal, No. 194, Oct. T., 1892, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1890, No. 760, on verdict for plaintiff, Sarah A. Wilson. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM, MITCHELL and HEYDRICK, JJ.

Appeal from jury of view assessing land damages.

At the trial, before COLLIER, J., a number of the witnesses testified to the value of the farm, before the location of the pipe line and after, basing their opinion, on cross-examination, on its division into building lots. This division had never been actually made upon the ground but was merely plotted on paper, and did not correspond with the street as laid out. The pipe line was laid along Spencer avenue, a street laid out by the city of Pittsburgh across the farm, but not opened.

One of plaintiff's witnesses, on cross-examination, testified:

" Q. How do you arrive at your estimate? A. Well, the only way to get any value out of the property is to cut it up

in lots and sell it.   Q. And then how many lines do you consider affected by the pipe line?   A. Well, there is quite a good deal of frontage affected; all of the nice bench is cut through by this line.   Q. What do you mean by the "nice bench?" A. The lay of the ground is such there is a very pretty bench in which to build houses, and you have gone diagonally across that bench, spoiling that portion of the property.   Q. Then you think we pass diagonally through a tier of lots?   A. Well, any person that would own the property would be obliged to lay it out in such a way to get the most money out of it, and they would have to run the streets in such a way to take advantage of the lay of the ground.   Q. Is your opinion based upon a subdivision of the property into lots?   A. Certainly.   Q. It is?   A. You would have to do that in order to dispose of the property.   Q. How many lots would be affected by the pipe line?   A. If you show me the plan I can show you the number of feet.   Q. In making your estimate you had before you a plan showing the subdivision of the property into lots?   Is that correct?   A. Yes, sir.   Q. And then you calculated upon how many lots would be affected according to that plan? A. Yes, sir.   Q. And how many lots did you find, according to that plan, would be affected?   A. Well, there is a good many lots; it would depend upon how you would lay them out? Q. Well, in making your estimate how did you lay them out? A. Well, I would calculate there would be about 500 feet that would be badly affected.   Q. That would be how many lots? A. That would depend upon how you lay it out.   Q. How did you lay it out in making your estimate?   A. Well, I figured it by the frontage.   Q. Did you consider how many lots there would be in that frontage?   A. You can make it hundred foot lots or you can make it fifty foot lots.   Q. In making your estimate what did you do?   A. I figured it on being property which should be laid out in a large way, and lots of a hundred feet would be very well adapted to the location.   Q. What damage did you estimate there would be to each lot?   A. Well, it varies according to the lay of the ground.   Q. How did you reach $4,000?   A. I figured $4,000.   There would be about five or six hundred feet would be damaged to the extent of five dollars a foot.   Q. And that was because there was a tier of lots that would be crossed diagonally?   A. Yes, sir.   Q. Did

you consider how many lots there would be ? A. There would be about five or six hundred feet. Q. How many lots ? A. Just according to the way you lay it out; in hundred foot lots it would be five or six lots. Q. Then your estimate was upon the ground that there would be a tier of lots crossed diagonally by this pipe line? A. Yes, sir. Q. And that tier of lots would be damaged $4,000? A. Yes, sir. Q. Do you know whether or not the property is now divided into lots ? A. I don't think it is."

Upon the conclusion of the cross-examination of each witness counsel for appellant made the following motion :

"Counsel for defendant moved to strike out the testimony of the foregoing witness, on the ground that his estimate of damage is based upon a subdivision of the property into lots, and the effect the construction of the pipe line would have upon the lots in the subdivision of the property ; and, also, that the streets are to be laid out over the property differently from those located by the city authorities."

Verdict and judgment for·plaintiff for $3,000. Defendant appealed.

*Errors assigned* were refusal to strike out testimony of witnesses, quoting the testimony given on cross-examination.

*George P. Graver*, with him *D. T. Watson*, for appellant.— Future division into lots and opinion as to what such lots would sell for is not proper basis for estimating damages : Pa. S. V. R. R. v. Cleary, 125 Pa. 442, affirmed in Schuylkill River R. R. v. Stocker, 128 Pa. 233.

*George W. Guthrie*, for appellee.—In estimating market value everything that gives intrinsic value is to be considered : Shenango & Allegheny R. R. v. Braham, 79 Pa. 447, and other cases cited in opinion of Supreme Court. The mere location of an unopened street does not relieve defendant from payment of damages : Negley Ave., 146 Pa. 456 ; Quigley v. R. R., 121 Pa. 35.

OPINION BY MR. CHIEF JUSTICE PAXSON, January 3, 1893 :

The only specifications of error are that the court below refused to strike out the testimony of certain witnesses for the plaintiff.

The defendant company, under its right of eminent domain,

located its pipe line over and across the farm of the plaintiff. The action below was an appeal from the report of the board of viewers. Upon the trial the plaintiff called a number of witnesses to prove the injury to his property by the location of the pipe line. They testified that its market value was lessened from three to eight thousand dollars. The amount, however, is not material for the purpose of this discussion. Upon cross-examination the fact was developed that a portion of the property was ripe for building purposes, and that the judgment of the witnesses was based to some extent upon the injury which the pipe line would be to the building lots.

Upon the trial below it is apparent that the defendant proceeded upon the theory that if plaintiff's land, at the time of the appropriation, was used only as a farm, the inquiry was limited to the amount of damages, if any, sustained by the land as a farm, and the witnesses called by it in relation to the damages were examined upon that theory. On the other hand, it was contended by the plaintiff that the inquiry was not so limited, but that in estimating the market value of the land, everything which gives it intrinsic value is to be taken into consideration, and it is not to be limited to a particular use.

The learned judge below adopted the plaintiff's view in this respect, and he is fully sustained by the authorities. In Shenango Valley Railroad Company v. Braham, 79 Pa. 447, it was held: " In estimating the market value of the land everything which gives it intrinsic value is a proper element for consideration. . . . It is its general market value for any purpose that will induce persons to purchase it that is the true test." And in Allegheny v. Black, 99 Pa. 152, it was said: "In estimating the market value of land, everything which gives it intrinsic value is to be taken into consideration and it is not to be limited to a particular use. To the same effect is Cummings v. The City of Williamsport, 84 Pa. 472; Pennsylvania & Schuylkill Valley Railroad Company v. Cleary, 125 Pa. 442; Schuylkill Railway Company v. Stocker, 128 Pa. 233; Harris v. The Schuylkill River Railroad Company, 141 Pa. 242. In the latter case it was said by our brother MITCHELL: "The true test is the difference between the value of the entire lot, as it was immediately before the taking, and the value of what was left of it after the taking. And in estimating the value of the lot before

taking, its possible and probable uses were important elements and might be shown by the evidence of expert witnesses."

In view of these authorities, and especially in view of the fact that the corporation defendant was endeavoring to limit the inquiry to the value of the land as a farm, we think it was competent for the plaintiff to show that a portion of it was ripe for building improvements, or for any other purpose that enhanced its value. The plaintiff's witnesses having testified in chief that the property as a whole was injured in amounts varying from three to eight thousand dollars, we do not think it affected the competency of their testimony that upon their cross-examination it appeared that their judgment was influenced to some extent by the injury the pipe line would cause to certain building lots. It will be noticed that the case lacks the speculative element in Schuylkill Valley Railroad Company v. Cleary, 125 Pa. 442. The evidence does not show that the witnesses based their testimony upon what they supposed the lots might have been sold for, and the price which they would bring after the pipe line was laid. There was no inquiry as to what a speculator might be able to realize out of a resale of the lots in the future. On the contrary, it was an estimate of what the property would be injured as a whole, taking into view the fact that a portion of it was ripe for building purposes.

Aside from this, the motion to strike out the testimony of each witness was not made as to the particular portions embraced in the respective assignments of error, but was a motion to strike out the whole. The appellant has picked out certain portions of the testimony, and assigned as error the refusal of the court to strike out such portions. Were there nothing else in the case, we think the learned judge below was justified in his refusal.

Judgment affirmed.