# Gorgas v. Philadelphia, Harrisburg & Pittsburg Railroad Company, Appellant.

*Railroads—Eminent domain—Damages—Division of land—Town lots—Witness.*

Where an owner of 150 acres of land divides ninety acres thereof into town lots, and subsequently a railroad company condemns a right of way through the ninety acres, the owner will not be permitted in condemnation proceedings to divide his land into two tracts, and to assess his damages for the injuries done to the ninety acre tract alone, as being the only part of the property affected by the appropriation.

Where land has been divided into lots and subsequently a railroad company has condemned a right of way through such land, the owner will not be permitted to introduce testimony to show that the railroad would take so many lots shown on the plan of lots, and the average value of the lots.

In railroad condemnation proceedings a witness as to land values cannot be interrogated in his examination in chief as to the money values of land similar to that under investigation.

In railroad condemnation proceedings it is error to admit in evidence an unrecorded paper plan of lots which were not marked on the ground, made twelve years prior to the time of the appropriation, and not including all. of the land as to which damages were to be assessed.

Argued April 25, 1906. Appeal, No. 101, Jan. T., 1906, by defendant, from judgment of C. P. Cumberland Co. Sept. T., 1905, No. 5, on verdict for plaintiff in case of W. L. Gorgas and George A. Gorgas, executors of the estate of William R. Gorgas, deceased, v. The Philadelphia, Harrisburg & Pittsburg Railroad Company. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Appeal from report of jury of view. Before SADLER, P. J.

The opinion of the Supreme Court states the case.

*Errors assigned* were various rulings on evidence, sufficiently shown by the opinion of the Supreme Court.

*Conrad Hambleton,* with him *John W. Wetzel,* for appellant, cited: R. R. Co. v. Stocker, 128 Pa. 233; Reiber v. R. R. Co., 201 Pa. 49; R. R. Co. v. Cleary, 125 Pa. 442; Grier v. Homestead Boro., 6 Pa. Superior Ct. 542; Erie, etc., R. R. Co. v. Smith, 125 Pa. 259; Penna. R. R. Co. v. Butler, 57 Pa. 335; Huntingdon, etc., R. R. Co. v. Decker, 82 Pa. 119; Pierson v. Duncan, 162 Pa. 187; Young v. Merkel, 163 Pa. 513; Burns v. R. R. Co., 213 Pa. 280; Hamilton v. R. R. Co., 190 Pa. 51.

*S. B. Sadler,* with him *F. E. Beltzhoover,* for appellees, cited: Pittsburg, etc., R. R. Co. v. Patterson, 107 Pa. 461; O'Brien v. Ry. Co., 194 Pa. 336; Wilson v. Equitable Gas Co., 152 Pa. 566; Warden v. Philadelphia, 167 Pa. 523; Gearhart v. Clear Spring Water Co., 202 Pa. 292; Griffin v. R. R. Co., 1 Montg. Co. 169; Danville, etc., R. R. Co. v. McKelvey, 1 W. N. C. 338; Setzler v. R. R. Co., 112 Pa. 56; Kossler v. Ry. Co., 208 Pa. 50; Penna. S. V. R. R. Co. v. Keller, 20 W. N. C. 125; Moser v. R. R. Co., 28 Pa. C. C. Rep. 73; Harrison v. R. R. Co., 36 Idaho, 323; Penna. S. V. R. R. Co. v. Cleary, 125 Pa. 442.

OPINION BY MR. JUSTICE MESTREZAT, May, 24, 1906 :

It was error for the court below to permit the plaintiff to divide his farm into two tracts of land and to assess his damages for the injuries done to one of the tracts. Since 1886, he has owned both tracts and they are physically connected and have been used as one tract by him for agricultural purposes. In estimating his damages, therefore, occasioned by the defendant company's appropriation of a strip of the land for widening its right of way, the tract should have been considered as one body of land, and the well-established rule for determining the damages should have been applied to the whole tract and not to a part of it: Schuylkill River, etc., R. R. Co. v. Stocker, 128 Pa. 233. As correctly said in that case (p. 251) : " If a witness may select a portion of the whole property affected by the building of a railroad, and determine the extent to which that alone is damaged, without valuing or even examining the

remainder of the property, it is evident that both the letter and the spirit of the rule will be violated." Plaintiff was entitled to recover the difference in the market value of the 150 acres of land immediately before and immediately after the defendant company had appropriated the strip for its use. Instead of applying this rule, the learned court permitted the plaintiff to show the damage done by the construction of the defendant's road to ninety acres of the tract which it was alleged had been plotted and laid out in town lots in 1893. In adjusting the difference in the value of the whole tract before and after the appropriation by the company, the plaintiff could show any and all uses to which the land or any part of it had been or might be applied. As elements of value, he was entitled to prove that the land or any part of it was ripe for building or any other purpose which would enhance its value. But his measure of damages was not the difference in value between the ninety acres, now utilized for building or any other advantageous purpose, before and after the construction of the road, but the difference in value between the whole tract of 150 acres before and after the appropriation by the defendant company. In other words, the plaintiff was entitled to have considered any and all proper elements of value of all or any part of his farm in determining the value of the farm before it was entered upon by the defendant, but the injury resulting from the defendant's appropriation of a strip of the land was the depreciation of the market value of the whole tract and not a part of it. As against the injuries sustained by the plaintiff by reason of the appropriation of the defendant company for its right of way, the defendant was entitled to set off the advantages or benefits actual and special to the entire tract of the plaintiff's land by reason of the construction of the railroad. It was therefore error for the court to permit the plaintiff to assess his damages against the ninety acres as " the only part of the property of the plaintiffs which is affected by the appropriation of land by the railroad." It is true that in his charge the learned judge gave the jury the proper measure of damages, but that did not cure the harm done in admitting the evidence complained of in the several assignments of error.

It was manifest error for the court to permit the plaintiff, in order to establish his damages, to introduce testimony showing

that the railroad would take so many lots shown on the plan, and the average value of the lots. One of the witnesses, in reply to a question put by plaintiff's counsel in chief as to the items of damages, said : "$3,000 for the lots taken. I base my judgment on the lots that are cut by the railroad company —almost fifty lots—when the plot of ground is thrown into the market they ought to bring on an average of about $200 a lot. In this lot, where there are five acres, the ground taken by the railroad company is 1.14 acres, and I consider the ground they have taken will, according to that valuation, amount to $3,000." In Penna. Schuyl. V. R. R. Co. v. Cleary, 125 Pa. 442, Mr. Justice WILLIAMS speaking for the court said (p. 452): "Equally improper is evidence showing how many building lots the tract under consideration could be divided into, and what such lots would be worth separately. It is proper to inquire what the tract is worth, having in view the purposes for which it is best adapted, but it is the tract, and not the lots into which it might be divided, that is to be valued. . . . The jury are to value the tract of land, and that only. They are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot. . . . They are not to inquire what a speculator might be able to realize out of a resale in the future, but what a present purchaser would be willing to pay for it in the condition it is now in. This is a rule that is well settled, and the court should have drawn the attention of the jury to it so as to have left no room for uncertainty on their part. They should have been told that they had nothing to do with the subdivision of this tract, the price of the lots, or the probability of their sale ; but that they were to ascertain the fair selling value of the land before and after the entry by the railroad company, in order to determine the actual damage done to its owner." Such unquestionably is the rule in this state, and the trial judge should have adhered strictly to it in ruling on the offers of testimony as well as in his charge to the jury.

The question put to the witness Baughman to elicit his knowledge of the price at which the Sherban land was held should have been excluded. It was not necessary to admit it for the purpose of showing the witness's knowledge as an expert, and the only effect of his testimony was to put before the

jury a more or less speculative value of the Sherban property as a basis for assessing the damages in this case. It is quite true, as suggested by plaintiff's counsel, that a witness may qualify himself to testify to the market value of property by showing that he has a knowledge of sales in the community and that he knows what property is held at in the community, but he cannot be interrogated in chief as to the money values of similar properties. This would be showing the general selling price of the property injured by evidence of particular sales of alleged similar property, which this court has uniformly held cannot be done : East Penna. R. R. Co. v. Hiester, 40 Pa. 53 ; P. V. & C. Ry. Co. v. Vance, 115 Pa. 325. The witness may be asked on cross-examination his knowledge of particular sales and the prices asked for property in the community for the purpose of testing his competency to testify, but such evidence in chief is clearly incompetent : Becker v. Phila. & Reading R. R. Co., 177 Pa. 252.

We think it was error to admit in evidence the plan of lots offered by the plaintiff. It purported to be a plot of lots laid out in 1893 in Lower Allen Township, Cumberland county, and covered the entire ninety acres of ground but excluded the residue of the plaintiff's 150 acre tract. The plan was not recorded and had been changed since it was made in 1893. The ground was not staked or marked off as shown on the plot, nor were any streets or roads marked on the ground conformable to those shown on the plan. This plan of lots, therefore, did not show the actual condition of the ninety acres at the time the defendant company appropriated a part of the land, nor did it show all the land owned by the plaintiff which was affected by the defendant's appropriation. It simply showed an unrecorded paper plan of lots which were not marked on the ground, made twelve years prior to the time of the appropriation, and hence was not evidence that the ground was adapted to building purposes or had actually been devoted to such purposes. Any evidence which tended to show that the land was available for improvements, not simply capable of being laid out on a paper plan or on the ground even, was admissible, but this plot was not of that character and should therefore have been excluded. Its only effect would be to lead the jury to believe that the defendant company had ap-

propriated so many lots or parts of lots as shown on the plan, and thereby enable the jury to erroneously ascertain the damages by allowing the plaintiff the supposed value of those lots. Parol testimony was not admissible to show that the land taken could be laid out into a certain number of lots for the purpose of determining the damage done the plaintiff, and this plan was equally incompetent for that purpose.

There may be some merit in the defendant's allegation that the charge was not adequate nor strictly impartial. If so, the learned judge will no doubt profit by this suggestion on the next trial, and observe what has been said by this court in some recent cases as to the duty of the trial court in submitting this class of cases to the jury.

There are other errors in the record covered by some of the numerous assignments of error to which we have not adverted and which need not be noticed, as they may be attributable to omissions in transcribing the notes, as suggested in the plaintiff's argument, and will, of course, not occur on another trial.

The assignments of error are sustained so far as the matters complained of therein are in conflict with the views above expressed, and the judgment is reversed with a venire facias de novo.