## Catlin *v.* Northern Coal & Iron Company, Appellant.

*Railroads—Eminent domain—Damage—Evidence—Witness—Expert —Exception—Assignment of errors—Appeals.*

1. Witnesses in condemnation proceedings should not be permitted to express an opinion as to values until they show by a preliminary examination that they have knowledge of the land, its area, improvements, the uses for which adapted, and the general selling price in the neighborhood.

2. An exception taken to the action of a trial judge in permitting witnesses' to express an opinion as experts after their preliminary examination, will not cover subsequent rulings on offers and questions to which no separate exceptions are taken.

3. A single assignment of error to the refusal of the court below to strike out the testimony of a large number of witnesses violates rule 29. Each error relied on must be made the subject of a separate assignment.

4. In a proceeding to assess damages for land condemned by a railroad company, the jury may consider the availability of the land for sale as building lots, if it appears that lots, streets and alleys were actually laid and marked on the ground; that the lots were located in a section of a city desirable for building purposes, and that they were available and on the market for sale as building lots at the time the railroad company entered; and this is the case although no lot had been actually sold because of the high price at which they were held.

Argued April 15, 1909. Appeal, No. 109, Jan. T., 1909, by defendant, from judgment of C. P. Luzerne Co., Dec. T., 1905, No. 69, on verdict for plaintiff in case of Sterling R. Catlin v. Northern Coal & Iron Company. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Affirmed.

Appeal from report of jury of view. Before LYNCH, P. J.

The opinion of the Supreme Court states the facts of the case.

*Errors assigned* were (1–13) various rulings on evidence and various instructions.

*George R. Bedford*, with him *Paul Bedford* and *Andrew H. McClintock*, for appellant, cited: Penna. Schuylkill Valley R. R. Co. v. Cleary, 125 Pa. 442; Schuylkill River, etc., R. R. Co. v. Stocker, 128 Pa. 233; Philadelphia Ball Club v. Philadelphia, 192 Pa. 632; Hamory v. R. R. Co., 222 Pa. 631; Cox v. R. R. Co., 215 Pa. 506; Gorgas v. R. R. Co., 215 Pa. 501.

*John T. Lenahan*, with him *Charles F. McHugh*, for appellee, cited: Ardesco Oil Co. v. Gilson, 63 Pa. 146; Schuylkill River, etc., R. R. Co. v. Stocker, 128 Pa. 233; McGroarty v. Coal Co., 212 Pa. 53; Wilson v. Equitable Gas Co., 152 Pa. 566; O'Brien v. Ry. Co., 194 Pa. 336.

OPINION BY MR. JUSTICE ELKIN, June 22, 1909:

The appellee for many years had been the owner of a rectangular tract of land located within the municipal limits of the city of Wilkes-Barre containing nearly thirty acres, eighteen acres of which were high ground available for building lots and the remainder was low ground suitable for agricultural purposes. As the city grew in population the land in question became available as a residential section. Several tracts near the land of appellee were purchased, divided into lots and sold as building sites. Appellee, evidently considering that his property was adapted to the same purpose, laid out the eighteen acres of high ground into building lots, plotted streets and alleys, all of which were marked on the ground, and offered the lots for sale. It is true that at the time of the appropriation no actual sales had been made, but this is explained by the fact that the asking price of the owner was $1,500 per lot, while the best price offered was only $1,000. He would not accept the price offered, and so the lots remained unsold. The testimony, however, clearly shows that the lots, streets and alleys were laid out and marked on the ground; that they were located in a section of the city desirable for building purposes; and that they were available

and on the market for sale as building lots at the time the defendant entered and took possession under proceedings to condemn. The appellant constructed a wye through and over the lands of appellee, dividing one part thereof from the other, and appropriated all the lots laid out between the two legs of the wye. The land actually appropriated was a little over four acres. The legs of the wye were elevated several feet above the surface of the ground by reason of which access from one part of the tract to the other was made difficult and the value of the whole tract either for building or agricultural purposes was seriously affected. The main contention of appellant is that witnesses at the trial in the court below were permitted to estimate the value of the tract at the time of the entry upon the basis of a building lot proposition. In order to determine the question raised it will be necessary to consider the assignments of error in some detail. The first four specifications relate to the qualification of four different witnesses produced by the plaintiff to testify as to market value before and after the taking. The rule is that the possession and sufficiency of knowledge of the land, its area, improvements, the uses for which adapted, and general selling price in the neighborhood, are preliminary questions to be determined by the court before the witness should be permitted to express an opinion. This method was pursued at the trial and each of the four witnesses complained of were subjected to this preliminary test. The learned trial judge ruled that the witnesses were qualified to express an opinion as to market value, to which ruling an exception was taken and bill sealed. After the question of competency had been determined many questions relating to market value were asked these witnesses on direct and cross-examination, but no exception was taken nor bill sealed to any question asked nor answer given. As the record stands the only question before this court is that raised by the exception taken at the conclusion of the preliminary examination as to the qualification of the witnesses objected to. We have no doubt as to the competency of these witnesses. In such cases a witness must have such knowledge of the subject-matter as can reasonably be expected in view

of the circumstances, the frequency or infrequency of sales, the location, adaptability of the land for any available purpose, and such other things as enter into a proper estimate of market value: Smith v. Railroad Co., 205 Pa. 645; Hope v. Railroad Co., 211 Pa. 401; Lally v. Railroad Co., 215 Pa. 436. The witnesses complained of in the present case fully meet the requirements of this rule and were competent to testify. After they were accepted as witnesses, if any question asked or answer given was improper, or in violation of the rules of law governing such cases, an exception should have been taken and bill sealed in order that each distinct question could be raised by a separate assignment. The matters complained of relate more particularly to the testimony of the witnesses given after the preliminary test of qualification had been passed upon, but this testimony was not excepted to and is not properly before us.

The fifth and sixth assignments relate to the refusal of the court below to strike out the testimony of a large number of witnesses because it is alleged that it was based upon their estimate of what said lands would ultimately bring if laid out in building lots and so sold, and not upon the market value of the land before and after the entry. These assignments are in plain violation of rule 29 of this court. Each error relied on must be specified particularly and by itself. Each distinct question must be made the subject of a separate assignment. Embodying in one assignment the alleged error of the trial court in refusing to strike out the testimony of four or more different witnesses is in violation of the rule: Brown v. Forest Water Co., 213 Pa. 440.

The seventh assignment also relates to the basis of estimating market value. At the trial a point was submitted asking the court to instruct the jury to disregard all the testimony of the plaintiff and his witnesses as to the value of the land based on their estimates of what might ultimately be realized from a sale of building lots because such valuation is speculative and too remote. The court answered, this point is correct if there be any testimony showing that the estimates were based on future sales. The appellant has nothing to com-

plain of in this instruction. The point submitted was indefinite both as to the witnesses and their testimony and the court answered in the same general terms.

The first seven assignments go to the question of whether it is proper in estimating the value of land taken in condemnation proceedings to consider its availability for sale as building lots. Some of our recent cases are relied on to sustain the contention that it is not. Gorgas v. Railroad Co., 215 Pa. 501; Hamory v. Railroad Co., 222 Pa. 631, are cited for this purpose. What was said in these cases if not considered in connection with their facts might appear to give support to the view now earnestly pressed upon us. These cases, however, must be read and understood in view of the situation at the time of the entry. The entry in these cases was made on farm lands in rural districts and they were not immediately available for sale as building lots. The effort was made to add a fictitious value to the lands entered upon by undertaking to show that they could be divided into lots and might be sold for building purposes. It was apparent, however, that this was all speculative and had no real basis in fact. The lands appropriated were farm lands, and in determining their value it was necessary to limit the inquiry to those intrinsic elements of value existing at the time of the appropriation. In the case last cited a witness was asked on preliminary cross-examination if his estimate of what the property was worth at the time of the entry was based upon what it would bring if it had been laid out in building lots and all the lots had been sold at what he considered them worth, to which an affirmative answer was given. This court held that the method of estimating market value indicated by the answer of the witness was improper. This case was clearly right on its facts. The tract of land had not been laid out in lots. It was farm land. There was no immediate prospect of its being available for sale as building lots and hence such a method of estimating value would be purely speculative.

The test in every such case is, what was the market value of the land, at the time of the appropriation, for any available purpose. If it was then available for sale as building lots and

had a market value for such purpose at the time of the entry it is proper to consider this element of value in determining what the property was then worth. All of our cases recognize that the use to which the land is best adapted may always be considered in estimating market value. If it has immediate value for sale as building lots it would be a very harsh rule which would deny the owner the benefit accruing to him by reason of having his property so favorably located. As we view the case at bar there is no doubt that a considerable portion of the land of appellee was available for sale as building lots and that it had a market value as such at the time of the entry. Under these circumstances it was proper to consider the present value of the land for this use at the time of the appropriation. Of course, future and speculative value as a lot proposition could not be considered, and as we read the testimony this rule was not violated. The remaining assignments of error are without substantial merit and do not constitute reversible error.

Assignments of error overruled and judgment affirmed.