# Kleppner v. Pittsburgh, Bessemer & Lake Erie Railroad Company, Appellant.

*Eminent domain—Condemnation of land—Damages—Measure of damages.*

1. While in condemnation proceedings the owner of land condemned is entitled to have the jury consider the value of the property for any and every purpose for which it may be used, and to have the damages assessed upon a basis of the most valuable use to which the property may be adapted, he cannot show its value by proving that the land could be divided into lots and what the lots would be separately worth; and the testimony of experts as to the value of such land, based exclusively upon their estimate of the number of lots into which the land could be di-

vided and the value of each, should be stricken out, and the refusal of the court so to rule is reversible error.

2. In showing the character of the land condemned plaintiff may show that it contained minerals by evidence that in drilling the property for oil, veins of coal had been discovered; the sinking of a shaft, or other development, need not be shown.

Argued Oct. 13, 1914. Appeal, No. 28, Oct. T., 1914, by defendant, from judgment of C. P. Allegheny Co., First Term, 1911, No. 574, on verdict for plaintiff, in case of Katharine Kleppner v. the Pittsburgh, Bessemer & Lake Erie Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Reversed.

Appeal from report of board of viewers in condemnation proceedings. Before DAVIS, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $2,650 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*William A. Seifert,* with him *Reed, Smith, Shaw & Beal,* for appellant.

*H. Fred Mercer,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 11, 1915:

We must sustain the fourth, fifth, sixth, seventh and eighth assignments and reverse the judgment entered by the court below. These assignments allege error in the court's refusal to strike out the testimony of certain witnesses who testified for the plaintiff in a proceeding to assess damages for land appropriated under the right of eminent domain. Having testified in chief as to the damages sustained, the witnesses on cross-examination

said they made up their estimates of the amount of damages by dividing the land into lots, fixing the price at which they would sell, and multiplying the number of lots by the price. The court, upon motion of defendant's counsel, declined to strike out the testimony, and its action is the subject of the assignments above referred to.

We have repeatedly ruled that this is not a proper method for estimating the damages sustained in condemnation proceedings. The measure of damages in such cases is the difference in the market value of the tract as a whole before the taking and afterwards as affected by it. In adjusting this difference, the landowner is entitled to have the jury take into consideration the value of his property for any and every purpose for which it may be used, and to have the damages assessed upon a basis of the most valuable use to which the property may be adapted: Cox v. Philadelphia, Harrisburg & Pittsburgh R. R. Co., 215 Pa. 506. While, therefore, the property owner may show that his land is ripe for building purposes which enhances its present value, he cannot be permitted to show that it can be divided into so many lots and what the lots would be separately worth. In Pennsylvania Schuylkill Valley R. R. Co. v. Cleary, 125 Pa. 442, 452, we said: "Equally improper is evidence showing how many building lots the tract under consideration could be divided into, and what such lots would be worth separately. It is proper to inquire what the tract is worth, having in view the purposes for which it is best adapted, but it is the tract, and not the lots into which it might be divided, that is to be valued......They (the jury) are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot. ......They are not to inquire what a speculator might be able to realize out of a resale in the future, but what a present purchaser would be willing to pay for it in the condition it is now in." The rule so announced has not

been departed from by this court although, as the reports show, we have had frequent occasions to consider and reannounce it.

The present case is similar to Harmony v. Pennsylvania, Monongahela & Southern R. R. Co., 222 Pa. 631. There, the witness after testifying that he had sufficient knowledge of the value of real estate in the neighborhood to express an opinion as to the market value of the property, was asked its value. Before replying, he was cross-examined and testified that he had fixed the value of the property by estimating what it would bring if it had been laid out in building lots and all the lots had been sold at what he thought they were worth. The defendant thereupon objected to the witness expressing an opinion as to the value of the property, but the objection was overruled and the testimony admitted. In reversing the judgment we said, speaking through Mr. Justice ELKIN (p. 633) : "While it is proper to take into consideration the use to which the land is best adapted, it is improper to determine the value of the whole tract by computing the number of lots it could be divided into, what each lot was worth, and the value of the whole tract estimated on this basis. This is not a proper method of arriving at the value of the whole tract as has been repeatedly ruled by this court: Pennsylvania Schuylkill Valley R. R. Co. v. Cleary, 125 Pa. 442; Gorgas v. Philadelphia, Harrisburg & Pittsburgh R. R. Co., 215 Pa. 501."

We see no reversible error in the other assignments. The plaintiff had the right to show the character of the land which was appropriated by the defendant company, whether it contained minerals or whether it was simply valuable for agricultural or other purposes. She was not required to sink a shaft and develop the coal before she could prove that the land contained coal measures. She did, however, show that in drilling the property for oil, two veins of coal had been discovered.

The judgment is reversed and a venire facias de novo is awarded.