### CITY OF PHILADELPHIA v. UNITED STATES.

No. 1485.

District Court, E. D. Pennsylvania.

Dec. 30, 1943.

Joseph P. Gaffney, of Philadelphia, Pa., for plaintiff.

C. James Todaro, Sp. Asst. to the Atty. Gen., and Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., for defendant.

BARD, District Judge.

Defendant, the United States of America, filed a motion for a new trial.

Plaintiff, City of Philadelphia, trustee under the will of Stephen Girard, deceased, was the owner of a tract of land containing 3.544 acres, comprising an entire city block, situated in the City of Philadelphia, bounded by 19th Street, Oregon Avenue, 20th Street and Johnston Street. The jury returned a verdict in favor of the plaintiff for $40,000 to compensate it for this land taken by the United States Government, by condemnation proceedings, for public use.

The single issue at the trial was the value of the land. Plaintiff's two witnesses valued the land respectively at $50,000 and $51,000. Defendant's two witnesses valued it respectively at $17,500 and $18,500.

No exceptions were taken to the Court's instructions to the jury. Defendant contends, however: (1) That the Court erred in denying the government's motion to strike the testimony of the plaintiff's witness Tomlinson; (2) that the Court erred in sustaining plaintiff's objection to a line of cross-examination of plaintiff's witness Phillips; and (3) that the verdict was excessive.

1. Tomlinson testified he has been a real estate broker for forty-three years. He recited his qualifications as an expert and his extensive knowledge concerning the value of real estate in this neighborhood, and placed a value of $51,000 upon the land at the time of its taking.

In direct examination and in cross-examination he testified that in making his estimate he took into consideration the value of similar properties, the sales of adjoining properties (Transcript, pp. 53, 59), the condition (p. 60), description (p. 57) and size of the condemned property, the surrounding neighborhood (p. 57), the street improvements (p. 58), the different uses to which the land might be put (pp. 58, 61), and also the most profitable use (pp. 58, 59) to which it might be put. He testified that he thought the most profitable use to which the land could be put would be to build residences.

After he had been examined and cross-examined as to his qualifications and examined and cross-examined as to his estimate and the factors entering into his estimate, counsel for defendant said there were no further questions. Counsel for the plaintiff then asked and was granted permission to ask one more question concerning the city zoning regulation, and the witness replied that these premises are in Zone D, permitting one to build houses in a row or with side yards, set back eight feet from the building line.

Thereupon counsel for defendant again cross-examined the witness at considerable length, directing this further cross-examination principally to the testimony concerning the most profitable use to which the land could be put. The record discloses the following:

"By Mr. Todaro: Q. Isn't it a fact, Mr. Tomlinson, that you considered, as the basis of your valuation of $50,000, a plan of development, the erection of houses, and the sub-division into lots?

"Mr. Gaffney: If your Honor please, I object to that, because even if he did it certainly wouldn't be testimony.

"The Court: The objection is overruled. I will let him answer that. A. Naturally, in order to set a value on a piece of land, you consider what its best uses are, and I considered the best uses of the ground was for the erection of dwellings, and it is easy enough to ascertain how many dwellings could be built upon the ground."

This line of questioning was permitted, and later the following took place (p. 71):

"By Mr. Todaro: Q. And in your mind, Mr. Tomlinson, you made a calculation of how many lots and how many houses could be built, and you also calculated what their cost per lot was?

"Mr. Gaffney: If your Honor please, I object to that."

After some discussion, the Court ruled (p. 72): "I think I will overrule the objection, but I want to caution the jury that when you come to determine the amount of money to which this plaintiff is entitled, you will determine what you think, from all the testimony in the case, is the fair value of the whole tract, and you will not consider any dividing of the tract into lots or the building of houses. You are to determine what the value of the whole tract is. However, I will overrule the objection

at this time and allow this line of testimony only to test the witness as to how he arrived at his figure, but I am cautioning the jury that when you come to figure and estimate what the verdict should be, you are to find the value of the whole tract, and I am allowing this line of questioning now only to test the witness in what manner he arrived at his estimate."

■ After the witness, over the plaintiff's objection, had answered the defendant's question, defendant moved to strike the entire testimony of Tomlinson, because, the defendant contends, the estimated value given by Tomlinson was based upon a subdivision of this land into building lots.

This is an erroneous assumption of fact. A careful reading of all of Tomlinson's testimony will disclose that he was not asked any questions by counsel for the land owner concerning a speculative plan of lots, nor did he in his evidence in chief give any figures based on such a plan of subdivision that would divert the minds of the jurors from performing their true function of finding the value of the whole tract at the time of taking.

In his cross-examination a persistent effort was made by government counsel to show that Tomlinson's estimate was based upon such a speculative plan, but all that he elicited from the witness was that since he considered the land adapted for the erection of houses, he took that into consideration as one of the elements in determining market value. Nowhere did he say that he based his estimate of value exclusively and solely upon a plan dividing the land into lots. His entire testimony clearly shows that his estimate was based upon a number of other proper factors enumerated earlier in this opinion (p. 3).

The answers of Tomlinson given in cross-examination to the particular questions put to him by defendant over plaintiff's objection, limited to the one element concerning the most profitable use to which the land could be put, can in no way nullify or destroy his competent evidence given in direct examination relating to the other factors upon which he based his estimate of value.

Not only at the time of the motion to strike, but again in my instructions or charge to the jury, I cautioned the jury to determine the value of the entire tract and not of the lots into which it might be divided.

In my instructions to the jury I defined market value and the elements upon which it is based by quoting (p. 122) from a Pennsylvania Supreme Court opinion, Pittsburgh, V. & C. Ry. Co. v. Vance, 115 Pa. 325, 331, 8 A. 764. Later I said (pp. 124, 125):

"When you come to consider market° value, remember that there are a lot of things upon which that is based, such as the location of the land, the extent and condition of its improvements, its quantity and productive quality, and the use to which it may reasonably be applied. Take all of these into consideration with the general price of lands in the neighborhood at the time of taking.

"Both sides agree here that when you consider the value of property you ought to put your award on the basis of the most profitable use for which the property is adapted, and I think both sides agree that the most profitable use for which this property could be used or adapted is the development of row houses or houses with side yards, as I think one witness expressed it. Let me caution you, however, that it is the market value of the entire tract that you must determine and not of the lots into which it might be divided.

"On cross-examination witnesses on both sides were permitted by the Court to be examined concerning the development for which the property is adapted. This, of course, was to bring out the testimony as to what this land is best adapted for, but it was also permitted to see if any witness based his estimate on the entire tract exclusively on a basis of individual lots or houses, and if so, his estimate would have to be excluded from the jury; but all the witnesses on both sides testified that their estimates were based on other proper factors, and for that reason the estimates of the four witnesses will all be submitted for your consideration, but let me again caution you that you are to value the tract of land as of April 21, 1941, and that only. You are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot. You should not inquire what a speculator might be able to realize out of a resale in the future, but you should consider what a purchaser would have been willing to pay for it on April 21, 1941, in the condition it was then in."

This is in accord with the law of Pennsylvania. Pittsburgh, V. & C. Ry. Co. v.

Vance, supra; Pennsylvania S. V. R. Co. v. Cleary, 125 Pa. 442, 17 A. 468, 11 Am. St.Rep. 913.

I think Tomlinson's testimony was competent and all of it was properly submitted for the consideration of the jury, and in a manner that was in no way prejudicial to the defendant.

Certainly, a motion to strike out the entire testimony, in view of the entire record, would be too sweeping. Defendant's cross-examination of Tomlinson did not so destroy his evidence in chief as to justify the court in striking out all of his testimony. See Wilson v. Equitable Gas Co., 152 Pa. 566, 25 A. 635; Wadsworth v. Manufacturers' Water Co., 256 Pa. 106, 100 A. 577, Ann.Cas.1917E, 1099; Keebler, Inc., v. Land Title & Trust Co., 266 Pa. 440, 109 A. 659.

■ 2. When the witness Phillips was on the stand, government counsel, in cross-examination, asked him this question (p. 45): "Into how many lots would you subdivide this piece of land?" The question was objected to and the court sustained the objection. Thereafter government counsel declined to question the witness any further because of the court's ruling. The court then said (p. 48): "I just ruled on your one question, that is all". It is, therefore, inaccurate to say, as is contended, that "the court committed error in sustaining the objection to a line of cross-examination which was proper and well within the scope of permissible cross-examination." The error complained of relates to one question and not to a line of questioning. I think the ruling complained of was correct. The question was not framed to test the basis of the witness' estimate, but was designed to circumvent the prohibition against introducing figures of subdivision. To have permitted this question, even on cross-examination, would have introduced a speculative feature to the minds of the jurors and would have been contrary to the well settled law of Pennsylvania. The Supreme Court of Pennsylvania said in Pennsylvania S. V. R. Co. v. Cleary, 125 Pa. 442, 452, 17 A. 468, 470, 11 Am.St.Rep. 913: "Equally improper is evidence showing how many building lots the tract under consideration could be divided into, and what such lots would be worth separately. It is proper to inquire what the tract is worth, having in view the purposes for which it is best adapted; but it is the tract, and not

the lots into which it might be divided, that is to be valued." See, also, Kleppner v. Pittsburgh, B. & L. E. R. Co., 247 Pa. 605, 93 A. 765; Rothenberger v. Reading City, 296 Pa. 423, 146 A. 104; Spring Valley Waterworks v. City and County of San Francisco, C.C., 192 F. 137, 163.

■ 3. If the Court's rulings as to the admissibility of evidence are proper, I cannot see that the Court can set aside the jury's verdict as being excessive. One witness estimated the value at $51,000, another witness at $50,000. There would, therefore, be no legal reason to set aside a verdict of $40,000. In my instructions to the jury I quoted from Johnson's Petition, 344 Pa. 5, 8, 23 A.2d 880, 881: "Experience has demonstrated that market value of land can not be determined with exactitude and that competent and honest experts are bound to differ when they express values in dollars. Consequently, when jurors are called upon to make a final decision as to values, they are entitled to know how the experts have arrived at their estimates, what elements they have placed in the scales in solving the problem."

I also said to the jury: "Expert witnesses are not the jury. They cannot take the stand and name a figure and then decide the case. Their opinion testimony is of such value as appeals to you. You are left to the free exercise of your own judgment. You cannot be bound by the opinion of the witness or the instruction of the court." Appeal of City of Philadelphia, 344 Pa. 439, 441, 25 A.2d 145, 146. In this case the jury did exercise their own judgment and named the figure $40,000. No valid reason has been presented why that figure should be disturbed.

■ Defendant argues that the Court should scan the record before the viewers to determine whether the verdict was excessive and to determine whether the ruling on the witness Phillips was proper. That suggestion must be rejected because the record made before the viewers is not before this court. The appeal from the findings of the viewers started the proceedings de novo in this court.

Careful consideration has been given to all of the arguments advanced for a new trial. I conclude that the issue to determine the value was fairly presented to the jury and their verdict will not be disturbed.

The motion for new trial is denied.