105          547
e216         ³511

# Getz et al. *versus* Philadelphia and Reading Railroad Company.

1. The landlord and the tenants of property taken and injured by a railroad corporation may unite in a proceeding to recover damages for such taking and injury. It is not essential in such case for the tenants to show that they hold under a written lease for a term certain; it is sufficient if it appear that they are tenants from year to year at a certain annual rent.

2. In such proceeding it would be proper for the jury, having ascertained the aggregate amount of damages sustained, to designate the portion to which each of the parties in interest was entitled.

3. In estimating the damages payable to the tenants, it is proper for the jury to consider, as elements of damage, the fact that the location of the railroad compelled the removal of the business conducted by the tenants, and the depreciation in value of the leasehold, and also of the machinery and personal property of the tenants used in their business, consequent upon such removal. The difference between the value of the machinery in connection with the business conducted on the property, and its value to be removed and applied to the same or other use, is a proper element of damage to be considered by the jury.

4. In estimating the damages, in such case, the jury can include what interest should, in their estimation, be added from the time the damages should have been paid.

March 6, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Berks county:* Of January Term, 1884, No. 246.

This case originated in the court below, by a petition filed June 13, 1881, by "Hiram S. Getz, and James K. Getz and Hiram S. Getz, doing business under the firm name of H. S. Getz & Co., lessees of Hiram S. Getz," for the appointment of seven persons to assess damages to Hiram S. Getz, owner, and to the firm of Hiram S. Getz & Co., lessees, for certain land taken and injured by the Philadelphia and Reading Railroad Company, in the city of Reading. Viewers were appointed, who assessed damages in favor of the petitioners at $9,000, of which the sum of $4,000 was for the value of the piece of land, owned by Hiram S. Getz, actually taken by the railroad company, "estimated at a perch, more or less," and the balance was the damage resulting to the marble yard and business of H. S. Getz & Co., transacted on the lot of which the said small portion was taken.

The petitioners appealed to the Common Pleas from the viewers' report, and by agreement filed the case was "put at issue under the form of an action of assumpsit, without further pleading, the plaintiffs taking the affirmative of the issue."

On the trial, before SASSAMAN, J., the following facts appeared in evidence: Hiram S. Getz was the owner of a lot of land in the city of Reading, situated at the corner of Spruce and Canal streets, containing 110 feet on Spruce street and 81 feet on Canal street, on which certain buildings were erected. In 1873 Hiram S. Getz leased these premises to R. M. Linton (his son-in-law), and H. S. Dresser, doing business as Linton & Dresser, for the use of a steam marble mill, for the term of four years and nine months from July 1, 1873, at the rent of $600 per annum. In 1874 Hiram S. Getz bought Dresser's interest in said firm, and the firm name was changed to H. S. Getz & Co., the partners being H. S. Getz and R. M. Linton. In 1875 James K. Getz was taken into said firm as a partner, the firm name remaining unchanged. In January, 1877, H. S. Getz bought the interest of R. M. Linton, and the business was thereafter conducted by H. S. Getz and James K. Getz, under the style H. S. Getz & Co., each partner having an equal interest in the partnership. No new lease was made, but H. S. Getz testified that "the lease was continued as it was, that is from year to year; or rather there was no definite time; but the rent was $600 a year. . . . . . I was the owner; the firm paid $600 rent every year, up to 1879; the rent was considered to be $600 a year; there was no definite time fixed for the lease to run; no doubt the firm would be there yet at that rent, and might be as long as I

lived, so far as I know; the rent for the year 1878 was considered to be $600."

On or about April 8, 1878, the Philadelphia and Reading Railroad Company surveyed and located a route for a siding or branch railroad, from their track on Canal street to the Reading Iron Works, and in November, 1878, built a railroad on said route, which cut across the corner of the said lot occupied by H. S. Getz & Co., and wholly obstructed their accustomed entrance and access to the premises.

Plaintiffs offered to prove " that after the location of defendants' road on the lot of the plaintiff, it was impracticable for plaintiffs to continue their business on the said lot, and that in consequence of such location they were obliged to remove their establishment, and what was the cost of such removal."

Objected to.

THE COURT.—" The damages would be speculative. The lessees have not shown that they had a lease which created such an estate as entitles them to any damages. The subsequent removal involves collateral issues. The injury is to be determined by the situation as it was at the time of the appropriation, April, 1878. It is irrelevant. Objection sustained; exception.

Other testimony was offered to show loss on machinery and damages to personal property of H. S. Getz & Co., caused directly by the railroad company, and indirectly by the necessary removal thereof. Objected to; objections sustained, the court saying: " The element of damages contained in this offer, I take it, is not comprehended by the Act of 1849, providing for land damages. An action of trespass at common law is the proper remedy for injury to personal property. . . . The tenancy there is of so uncertain character, as established by the proof by the plaintiffs, that we can hardly see how any satisfactory value before the construction and after the construction of the railroad can be established for this machinery, which at best does not seem to us to have been attached to the land. This mode of inquiry seems to us rather vicious, and the form in which this question is put seems to us so dangerous in establishing anything like a fixed or satisfactory value, that we reject the offer." Exception.

Some testimony was, however, subsequently received upon the above points.

Plaintiffs presented the following points:

1. The petition for damages having set out an application on behalf of Hiram S. Getz, and of Hiram S. Getz and James K. Getz, lessees of Hiram S. Getz, and that the defendants had constructed on their premises a railroad track, and the plaintiffs having proved that Hiram S. Getz was the owner in

fee of the premises, and that Hiram S. Getz & Co. were occupying the same as lessees and carrying on a marble mill on the said premises, they are entitled to recover all the damages which have been sustained by them both as owner and lessees, their joint interest amounting to the entire ownership.

Answer. Hiram S. Getz is entitled to all the damages caused to his land by reason of the location and construction of this siding, a branch of the Philadelphia and Reading Railroad Company, and H. S. Getz & Co. are entitled to all the damages done to the leasehold, which, in this case, had "no time" or term affixed.

2. They are, therefore, entitled to recover not only the damages which have been sustained by Hiram S. Getz, as the owner of the reversionary interest, but also for interest, and to the business which they were conducting at the time the track was constructed, and the jury are authorized to assess the damages done as a whole.

Answer. The answer to the first point is our answer to this point.

3. That a part of these damages consists of the injury done to the machinery and leasehold interest of the lessees.

Answer. I cannot say so. The machinery was the undisputed property, subject to removal, of the lessees, whose lease as to time is undefined—it had no connection with the ownership of the land other than attached to an uncertain tenure.

4. That the evidence shows that the firm of H. S. Getz & Co. had such an interest in the premises on which the road was built at the time of its construction, as is protected by the statute, and they are entitled to recover such damages as the jury may find under the evidence they have sustained.

Answer. I do not so understand the law.

5. If the jury find from the evidence that it was not practicable for H. S. Getz & Co. to continue their business on the premises by reason of the location of the defendants' road, they are entitled to recover the difference between what the machinery was worth in connection with the property as a marble mill, and what it was worth to be removed from the premises and applied to the same or other use, and such difference may be included in the estimate of the damages.

Answer. I cannot say so. The tenure is too uncertain to form any proper estimate upon this point. The rule here might be, the shorter the leasehold the greater the perversion, and this, either way, is not under this uncertainty easily determinable.

6. If the jury find from the evidence that it was impracticable for H. S. Getz & Co. to continue their business on the premises by reason of the location of the defendants' road,

and that by reason of the inconvenience and danger resulting from the location of the road, an ordinarily prudent man would not continue business there, they are entitled to recover for the depreciation of the value of the machinery caused there.

Answer. This would be regulated by their tenure, which is undefined by evidence, and herein what is asked here would be merely speculative.

7. The rule of the assessment of damages in cases of this character, in Pennsylvania, is the difference between the value of plaintiffs' property, before the road was located, and its value after such location, the plaintiffs being entitled to recover all the damages directly and naturally resulting from the construction of the defendants' road.

Answer. Affirmed.

8. The plaintiffs must be allowed interest upon the amount of the damages, which the jury may find from the 6th November, 1878, the date of the location of the road, to this time.

Answer. I cannot say so; but in making up the amount of damages the jury can include what interest should, in their estimation, be added from the time the damages should have been paid.

Portions of the charge of the court, in reference to the absence of sufficient evidence to show that the firm of H. S. Getz & Co. had a status to claim damages as lessees, they having no certain tenure as such, are quoted in the opinion of this court.

Verdict "in favor of Hiram S. Getz, for $2,700," and judgment thereon. The plaintiffs took this writ of error, assigning for error the exclusion of their offers of testimony, the answers to their points, as above, (other than the 7th point,) and the ruling of the court, in the general charge, that there was not sufficient evidence of a leasehold estate in the firm of H. S. Getz & Co.

*H. Willis Bland* and *A. G. Green* (*H. D. Green* with him), for the plaintiffs in error.

*George F. Baer*, for the defendant in error.

Mr. Justice STERRETT delivered the opinion of the court, October 6, 1884.

While the learned judge did not say in express terms, that the tenants, H. S. Getz & Co., had no such interest in the lot and machinery thereon, or in the business that was there carried on, as would entitle them to recover, he practically instructed the jury that they had no case. In his rulings on

offers of evidence and in his instructions to the jury, he suggested in a way that could not be misunderstood, that they had shown nothing on which to base a claim for damages against the Railroad Company. In excluding the offer to prove by the junior member of the firm, "that, after the location of defendants' road on the lot, it was impracticable for plaintiffs to continue their business on the lot; that in consequence of such location they were obliged to remove their establishment, and what was the cost of such removal," the learned Judge said: "The damages would be speculative; the lessees have not shown that they had a lease which created such an estate as entitles them to any damages." Again, in rejecting the offer to prove by the senior member of the firm the amount of damages done to the machinery by reason of the location of the road, he said: "This proceeding is for the recovery of damages done to land, and this land includes appurtenances thereunto belonging: but how machinery belonging to a different party from the landowner could be claimed as appurtenant to the land, I cannot see, and unless it were appurtenant to the land, it would not be an element of damages in this issue." In answering plaintiffs' first and second points, in which he was substantially requested to charge that Hiram S. Getz was entitled to recover all the damages he sustained as owner in fee of the lot, and H. S. Getz & Co. were entitled to recover the damages they sustained as lessees of the premises, he said, inter alia: "H. S. Getz & Co. are entitled to recover all the damages to the leasehold, which in this case has no time or term affixed." Prior to this, in the general charge, after having spoken of the claim of Hiram S. Getz as owner in fee, he instructed the jury as follows: "Then we come to the firm of H. S. Getz & Co. Being hung together we were in difficulty, and no doubt you will be. In the first place, H. S. Getz & Co. have nothing to do with this land at all under the Act of Assembly, which provides for the assessment of damages, unless they show a lease and tenure there for a term or number of years." Again, referring to the plaintiffs' testimony, the learned Judge said: "There is no evidence of a lease here on the part of Hiram S. Getz to the firm of H. S. Getz & Co., none whatever. All that he said is, that when the old lease expired they had a rent of $600 a year until the spring of 1879. And that is this uncertain tenure upon which we are now asked to say to you, gentlemen of the jury, that there can be a recovery, because this firm had put much machinery in there. That is a tenancy so much at will, instead of what is defined as a tenancy for a term of years (Mr. Getz himself said there was no time,—'no time' is the expression that he used all through) that I cannot see how there can be

any recovery of damages on account of that lease.   If you can find in this evidence that there was a term expressed in writing or in parol, in regard to this firm of H. S. Getz & Co. I cannot see it.   But, if you can find anything of that kind in the evidence (you may recollect more than I do), you will have to take it into consideration."   Much more of similar import was said on the subject of H. S. Getz & Co.'s claim, but sufficient reference has been made to the rulings and charge of the court to show that a special effort was made to convince the jury that the firm had no case.

It is claimed by defendants in error that the foregoing answers to plaintiffs' first and second points, taken in connection with the general charge, was a fair submission to the jury, of the lessees' claim, on the evidence introduced by them.   We are very far from being persuaded that such was the case. Notwithstanding the adverse and erroneous rulings of the court in the outset, the lessees afterwards succeeded in giving some evidence in support of their claim, but it was completely nullified by the answers to their fourth, fifth and sixth points. The fourth point was : " The evidence shows that the firm of H. S. Getz & Co. had such an interest in the premises on which the road was built, at the time of its construction, as is protected by the statute, and they are entitled to recover such damages as the jury may find, under the evidence, they sustained."   The answer to this was : " I do not so understand the law."   In like manner their claim was practically excluded from the consideration of the jury by refusing to affirm their fifth point, as to damages, and saying : " The tenure is too uncertain to form any proper estimate upon this point ; " and also by saying in answer to their sixth point on the same subject : " This would be regulated by their tenure, which is undefined by the evidence, and herein what is asked here would be merely speculative."

It is very evident from the foregoing references to the rulings and instructions of the court that the lessees, H. S. Getz & Co., were most effectually ruled and charged out of court ; and it is not at all surprising that they were also ignored by the jury in their verdict.

It is conceded that Hiram S. Getz, one of the plaintiffs, was owner in fee of the lot, at the southwest corner of Spruce and Canal streets, in the city of Reading, fronting 110 feet on the former and 81 feet on the latter street, and having thereon erected a dwelling, warehouse, office, marble mill and other structures, with machinery used for sawing marble, to which business the lot was mainly devoted ; and that a triangular portion of the lot at said corner was appropriated by defendant company for the use of its track located on each of said

streets. It was claimed that by reason of the location and construction of the road at the point in question, and the appropriation of the said corner of the lot, the residue was greatly depreciated in value; and for this, together with the land actually taken, he claimed compensation. The burden of his complaint is, that in consequence of the adverse rulings of the court, he was not allowed as much as he was fairly entitled to. It was also claimed that H. S. Getz & Co., composed of Hiram S. Getz and his son James K. Getz, owned the stock and machinery, carried on the business of sawing marble, etc., and for that purpose were lessees and occupants of the premises; that the location and construction of defendants' road greatly interfered with their business, rendered its continuance on the lot impracticable, and thus necessitated their removal therefrom. The fact that they were carrying on the business as partners was not questioned; and notwithstanding the exclusion of evidence that was clearly competent, they succeeded in introducing some testimony tending to prove that they were lessees of the lot in question, at least from year to year, at an annual rental of $600, and that they had sustained damages for which they were entitled to some compensation at least. If the testimony had been submitted to the jury under proper instructions, they would have been warranted, if they believed it, in awarding damages to the firm as lessees of the premises; but, as we have already seen, the instructions of the court precluded any such result.

The joinder of the owner in fee with his lessees,—the latter claiming damages to their leasehold, business, machinery, etc., and the former claiming damages to his reversionary interest in the premises,—was not objected to by the Railroad Company, and should have created no such serious embarrassment, either to the court or jury, as the learned Judge appears to have thought it did. It was certainly not to the disadvantage of the defendant. The united interests of the respective parties plaintiffs embraced everything that could properly form the basis of claim for damages, direct or consequential; and having ascertained the aggregate amount of damages sustained, the jury could have no serious difficulty in designating the portion to which each of the plaintiffs was entitled. In the Railroad Co. *v*. Hall et al., 1 Casey, 336, it was held that damages occasioned to a tract of land owned by several different parties may be assessed in gross, and need not be apportioned among the different claimants according to their respective interests; but, we think the better practice is for the jury to find the aggregate amount, and then, if they have the evidence on which they can do so, apportion the same among the several claimants. The position of each of the

[North and West Branch Railway Co. v. Swank.]

plaintiffs in this case, and their respective rights, under the circumstances disclosed by the testimony, are correctly set forth in their first to sixth points inclusive, and these points should have been affirmed. The seventh point, as to the general rule for assessment of damages was rightly affirmed. There is no error in the answer to plaintiffs' eighth point.

It may be remarked in closing that the assignments of error, relating to plaintiffs' points, are not according to rule and might be disregarded. When a point is answered in such a way as to be tantamount to a refusal it is not enough to complain as though it had been refused, without more. The answer as well as the point should be quoted, *totidem verbis*, in the specification of error.

> Judgment reversed, and a venire facias de novo awarded.