# Wadsworth *v.* Manufacturer's Water Company, Appellant.

*Eminent domain — Water companies — Damages — Measure of damages.*

1. When in any instance it becomes necessary for a water company to resort to condemnation in order to acquire land for a public improvement, expert witnesses, in estimating the market value of such land, may consider as an element its adaptability for the particular use for which it is being appropriated; but they may not

take into account the general rise or fall common to all property in the neighborhood consequent upon and directly due to the coming of the improvement as suggested by the prices which the corporation has been obliged to pay to secure other lands.

2. Where all the evidence, including that of defendant's engineer, showed that the land in controversy was especially adapted for dam purposes, it was not error to permit the jury to take that fact into consideration in determining the market value of the land previous to the taking.

*Evidence—Practice, C. P.—Trial—General objection to evidence —Motion to strike out instruction to disregard testimony.*

3. In such case, where expert witnesses testified for plaintiff as to the value of the land taken, and defendant's counsel objected to the witness taking into consideration, in making up his estimate of the value of the plaintiff's property, "any sales that were made to the defendant company" the objection was properly overruled, where there was no notice or intimation that the sales in question were in fact purchases by the defendant after the location of its reservoir or subsequent to or in the course of actual condemnation proceedings.

4. The refusal to strike out testimony upon motion made after a witness has left the stand is not reversible error; in such case the only course open is to ask that the jury be instructed to disregard the objectionable evidence.

5. Where in such case it appeared from cross-examination of plaintiff's witnesses and from defendant's evidence that certain of the sales relied upon by plaintiff's witnesses in making up their estimate of the value of the property in controversy were sales of land purchased by defendant in the course of the condemnation, the refusal of a motion to strike out such testimony was proper, where the motion was in effect so comprehensive as to include all the evidence given by the witnesses, and where the motion was not made until the close of defendant's case when the issues were about to be presented to the jury.

*Trials—View of property—Charge of court.*

6. The jury may not resort to the knowledge acquired by a view of the premises as substantive evidence from which to find the amount of damages, but only for the purposes of understanding the testimony of the witnesses and of determining the relative weight of conflicting testimony as to the value of the property.

7. In such case it was not error to charge the jury that "you simply go on the land to view the ground and the location, so that you may intelligently understand the evidence that will be introduced in court, and not for the purpose of deciding the case from

what you see there or from what you may hear, but for the purpose of viewing the location and having an intelligent understanding of the evidence that is produced on the trial here in court. ......You......inspected the dam and the premises......and those portions taken......for the dam purposes, not that you would use what you saw in the shape of substantive evidence, from which you would find the amount of damages, but in order that you would understand and appreciate the evidence produced here in court by both sides."

Argued Sept. 26, 1916. Appeal, No. 167, Oct. T., 1916, by defendant, from judgment of C. P. Somerset Co., Feb. T., 1910, No. 150, on verdict for plaintiff, in case of Joseph Wadsworth v. Manufacturer's Water Company. Before Brown, C. J., Mestrezat, Potter, Stewart, Moschzisker, Frazer and Walling, JJ. Affirmed.

Appeal from award of viewers in condemnation proceedings. Before Johnson, J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $9,547 which the court subsequently reduced to $6,000 and entered judgment on the reduced verdict. Defendant appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*J. G. Davies,* with him *F. B. Hamilton* and *Uhl & Ealy,* for appellant.—It was error to permit plaintiff's witnesses to fix a value for the land taken based upon prices paid by the defendant company for other lands used by it in the same original undertaking, which prices were grossly in excess of the prior market value of such land: Pacific Railway & Nav. Co. v. Elmore Packing Co., 60 Oregon 534; United States v. Freeman et al., 113 Fed. Repr. 370; Hays v. Risher, 32 Pa. 169; Pittsburgh & Western R. R. Co. v. Patterson, 107 Pa. 461; East Penna. R. R. Co. v. Hiester, 40 Pa. 53; Curtain v. Nittany Val. R. R. Co., 135 Pa. 20; Becker v. Philadel-

phia & Reading Terminal R. R. Co., 177 Pa. 252; Gorgas
v. Philadelphia, Harrisburg & Pittsburgh R. R. Co., 215
Pa. 501; Neely v. Western Allegheny R. R. Co., 219 Pa.
349; Chambersburg & Bedford Turnpike Rd., 20 Pa.
Superior Ct. 173; Clarion Turnpike & Bridge Co. v.
Clarion County, 172 Pa. 243; West Chester & Wilming-
ton Plank Road Co. v. Chester County, 182 Pa. 40.

The estimates of the value before and after the appro-
priation placed upon said property by plaintiff's wit-
nesses who included in arriving at their estimate of dam-
ages sales made to defendant company as a result of
compromises after condemnation proceedings had been
instituted, were erroneous: Penna. Schuylkill Val. R. R.
v. Ziemer, 124 Pa. 560.

The court had no right to permit the jury to consider
the availability of plaintiff's land as a dam site since it
could only be so used in connection with other lands
which defendant owned and which could not be pur-
chased in the general market or acquired by plaintiff by
condemnation proceedings: Gerhart v. Clear Spring
Water Co., 202 Pa. 292; City of New York v. Sage, 239
U. S. 57; McGovern v. City of New York, 229 U. S. 363;
Harris v. Schuylkill River East Side R. R. Co., 141 Pa.
242.

The instructions to the jury to the effect that their
view of the land was permitted merely in order that they
might more intelligently understand the evidence pro-
duced in court was reversible error: Gorgas v. Phila-
delphia, Harrisburg & Pittsburgh R. R. Co., 144 Pa. 1;
Hartman v. Penna. Schuylkill Val. R. R. Co., 22 W. N.
C. 84.

*Frank P. Barnhart,* with him *Berkey & Shaver,* for
appellee.—The trial judge was careful to require the
witnesses to base their estimates of value in each in-
stance upon actual fair sales when no advantage may
have been taken: Pittsburgh & Lake Erie R. R. Co. v.

Robinson & Rea, 95 Pa. 426; Hope v. Philadelphia & Western R. R. Co., 211 Pa. 401; Brown v. Forrest Water Co., 213 Pa. 440; Gerhart v. Clear Spring Water Co., 202 Pa. 292.

A motion to strike out testimony will not prevail where the objection on which the motion is sought to be based was not made promptly.

Where a general objection is made and the objection is overruled, an appellate court will not interfere: Wolverton et al. v. Com., for use of Hart & Co., 7 S. & R. 273; Brown v. Kolb, 8 Pa. Superior Ct. 413.

OPINION BY MR. JUSTICE MOSCHZISKER, January 8, 1917:

Defendant is a water company duly organized under the laws of Pennsylvania; in order to secure a supply of water for the City of Johnstown, it located a reservoir and proceeded to obtain the required land, in all about one thousand acres; at the time, the properties necessary to the contemplated improvement were held by 34 different owners, and, in most part, they were taken over by purchase; all save three of these purchases were consummated by the defendant in course of the condemnation of the respective pieces of land, and all of them were made subsequent to the location of the reservoir and after one or more condemnation proceedings had been instituted; the plaintiff owned a tract of 31 acres, six and one-half of which were appropriated by the defendant company; the parties were unable to agree upon a price, so viewers were appointed, but the plaintiff, being dissatisfied with their award, took his case to the Common Pleas; he secured a verdict for $9,547, which was subsequently reduced to $6,000; the defendant has appealed from the judgment entered on this reduced verdict, and complains of certain rulings on the evidence and instructions to the jury.

The chief error alleged is that the expert witnesses,

called by the plaintiff to prove the value of his property, were allowed to base their respective estimates on the prices paid by the defendant for other lands previously purchased or acquired by it in the course of the improvement. There is no particular difficulty about the general principles involved in this complaint; but the trouble arises in their application to the facts in the case, when we examine the manner in which the latter were presented in the court below and are brought here for review.

We shall first determine the guiding rules of law and then consider the question of their application. Section 34 of the Act of April 29, 1874, P. L. 73, confers the right of eminent domain upon water companies and authorizes such corporations before they "shall proceed to occupy any land......to agree with the owner or owners thereof for the purchase of so much thereof as may be necessary......, but in case they cannot agree proceedings [to condemn] shall be had......" Section 41 of the same statute provides: "In all cases in which, under the provisions of this act, any corporation is permitted to take ......lands......, and the said corporation cannot agree with the owner or owners......upon the compensation......, the court of Common Pleas of the proper county......shall appoint five......freeholders...... and they shall estimate and determine the......value of said lands......" This act plainly contemplates that, in each instance, where a water company desires to acquire property, for a reservoir or other public purpose, the corporation must make an effort to agree with the owner upon a purchase-price before resorting to condemnation proceedings. Therefore, it follows as a matter of course that, when in any given case this prerequisite is observed, and negotiations are successfully carried through to an accomplished purchase, in subsequent legal proceedings to gain possession of other lands needed for the same public improvement, all such prior

purchases must be considered and treated as though made in the due course of the exercise of the right of eminent domain, and not as separate private transactions. Moreover, when, in any instance, it becomes necessary for a water company to resort to condemnation in order to acquire land for a public improvement, in estimating the market value of such land, while an expert may consider, as an element, its adaptability for the particular use for which it is being appropriated (North Shore R. R. Co. v. Penna. Co., 251 Pa. 445, 448; Kleppner v. Pittsburgh, Bessemer & Lake Erie R. R. Co., 247 Pa. 605; Marine Coal Co. v. Pittsburgh, McKeesport & Youghiogheny Co., 246 Pa. 478, 485; Brown v. Forest Water Co., 213 Pa. 440, 441; Gearhart v. Clear Spring Water Co., 202 Pa. 292, 296, 297; Pittsburgh & Western R. R. Co. v. Patterson, 107 Pa. 461, 464-5), yet neither he, nor the jurors who are to pass upon the damages, may take into account the general rise or fall common to all property in the neighborhood consequent upon and directly due to the coming of the improvement (Harris v. Schuylkill River East Side R. R. Co., 141 Pa. 242, 252-3), as suggested by the prices which the corporation has been obliged to pay to secure other lands; for "what the particular owners [of such other lands] were willing to accept or had accepted from the company, by way of settlement or compromise," is no proper criterion of the value of plaintiff's property: Penna. Schuylkill Val. R. R. Co. v. Ziemer, 124 Pa. 560, 571; East Penna. R. R. v. Hiester, 40 Pa. 53, 56. In condemnation cases, evidence of this character might, to a degree, indicate what the defendant water company considered the land previously acquired worth to it; but, in such instances, the compensation to which an owner is entitled is what the property in question would, immediately prior to the taking, have produced to him in the open market, "not what it might be worth to the defendant taking it": Lehigh Coal Co. v. Wilkes-Barre & Eastern R. R. Co., 187

Pa. 145, 151; West Chester & Wilmington Plank Road Co. v. Chester County, 182 Pa. 40, 48; Clarion Turnpike & Bridge Co. v. Clarion County, 172 Pa. 243, 250.

Finally, the rule is well stated by Mr. Justice HOLMES in City of New York v. Sage, 239 U. S. 57, 61, where he says: "No doubt, when this class of questions first arose, it was said in a general way that adaptability to the purposes for which the land could be used most profitably was to be considered; and that is true. But it is to be considered only so far as the public would have considered it if the land had been offered for sale in the absence of the city's exercise of the power of eminent domain. The fact that the most profitable use could be made only in connection with other land is not conclusive against its being taken into account, if the union of properties necessary is so practicable that the possibility would affect the market price. But what the owner is entitled to is the value of the property taken, and that means what it fairly may be believed that a purchaser in fair market conditions would have given for it in fact—not what a tribunal at a later date may think a purchaser would have been wise to give, nor a proportion of the advance due to its union with other lots. The city [here the water company] is not to be made to pay for any part of what it has added to the land by thus uniting it with other lots, if that union would not have been practicable or have been attempted except by the intervention of eminent domain. Any rise in value before the taking, not caused by the expectation of that event, is to be allowed, but we repeat it, it must be a rise in what a purchaser might be expected to give." See also McGovern v. New York, 229 U. S. 363, 373, and North Shore R. R. Co. v. Penna. Co., 251 Pa. 445, 448, et seq.

Our decisions are in practical accord with the law as laid down in the above quoted excerpt, and no serious inconsistency exists in the Pennsylvania cases upon the subject in hand. In Pittsburgh & Lake Erie R. R. Co. v.

Robinson & Rea, 95 Pa. 426, 432, there is nothing to show that the sales referred to were purchases of land for one and the same improvement, or, if so, that they, or any of them, were made in the course of, or in anticipation of, condemnation proceedings; and, even if they were, there is nothing to indicate that the witness, whose testimony we ruled should have been admitted, intended to base his estimate of value upon these sales.   On the contrary, it appears that the sales there in question were merely being used to show the witness's familiarity with real estate transactions in the neighborhood, in order to qualify him as an expert; in connection with this case see Friday v. Penna. R. R. Co., 204 Pa. 405, 409-11, where we reversed a judgment for the plaintiff, because certain of her experts had been permitted to testify, when, as a matter of fact, their only knowledge of "the value of property in the vicinity was of the price paid by the same defendant for some adjoining pieces."   Again, Burns v. Penna. R. R. Co., 229 Pa. 648, 652, does not rule that "evidence of the value of [other] lots taken by the defendant company in its condemnation proceedings" was competent proof of the value of the land in suit; but merely that, since the plaintiff had put in evidence a deed for such other lots, which apparently indicated the prices paid therefor, and this "for the purpose of showing ......the value of the lots taken by the defendant company in its condemnation proceedings," under the circumstances, the latter should have been permitted to explain the consideration named therein.

As already indicated, however, the substantial question on the present branch of this case is: Does the record brought before us, by the several assignments on the subject we have been discussing, show material error in the application of the established rules of law to the facts as they were developed in the court below?  In other words, having determined the law, we must now look to its application.

The relevant assignments show that, when the experts for the plaintiff were examined in chief, in each instance, counsel for the defendant objected to the witness taking into consideration, in making up his estimate of the value of the plaintiff's property, "any sales that were made to the defendant company"; whereupon, the trial judge, in overruling the objection, said: "My decision flatly is, that if there were sales made in the market to this defendant, in other matters, of other lands, in this neighborhood, that the witness may consider those sales and the prices received therefor." While the words used upon each occasion slightly differ, yet the language just quoted fairly presents the complaint of counsel and the ruling of the court as set forth in the several assignments now under consideration. As the matter is brought before us in these specifications of error, it cannot properly be said that the trial judge erred in his rulings; for the objection was to "any sales that were made to the defendant company," without notice or intimation that the sales in question were, in fact, purchases by the defendant after the location of its reservoir, or that they were made subsequent to or in the course of actual condemnation proceedings. Moreover, the words of the trial judge distinctly convey the impression that, at this stage of the evidence, he did not understand these sales to be of the character just suggested; but, rather, that he conceived them to be purchases made by the defendant in the open market without any qualifying attending circumstances.

It is true that subsequent cross-examination of some of the plaintiff's experts elicited indications that certain of the sales relied upon by them, in making their estimate of the value of the property in controversy, were of lands purchased by the defendant in the course of condemnation, and, later, the uncontradicted testimony produced by the defendant proved such to be the fact; but the assignments of error which complain of the re-

fusal to strike out the objectionable testimony of these experts show the overruling of a motion, which, in effect, was so comprehensive as to include all the evidence given by the witnesses in question; and, furthermore, this motion was not interposed until the close of the defendant's case, when the issues were about to be presented to the jury. It may be that most of the experts called by the plaintiff based their estimates upon the improper standard now complained of, yet their evidence indicates that they also considered other relevant and competent sales; therefore, had a prompt motion been made to strike out the incompetent parts of their testimony, the trial judge would have had an opportunity to eliminate the bad and preserve the good, which would still have left the plaintiff some substantial proofs on the question of the value of his land. To have granted the motion when and as made, however, would have prejudiced the plaintiff's case seriously and unwarrantedly.

Since the defendant's original objection to the evidence subsequently sought to be eliminated was properly overruled, for purposes of our present inquiry the case stands as though the evidence in question had been admitted without objection; and, under these circumstances, we have but recently ruled that a refusal to strike out testimony "made after the witness has left the stand" will not be adjudged reversible error. "In such a case, the only course is to ask that the jury be instructed to disregard the testimony": Forster v. Rogers Bros., 247 Pa. 54, 62, et seq., and authorities there cited. See also Henry's Penna. Trial Evidence, 387-9, and Brown v. Kolb, 8 Pa. Superior Ct. 413, 422. In the case at bar a request of this character was granted; and, after verdict, the court below gave the defendant further relief by ordering a remittitur of all damages above $6,000. The trial judge expresses the view that the amount finally allowed is fair and reasonable; it may be too high, but, since all the testimony in the case, in-

cluding that of defendant's engineer, shows the land in controversy to be especially adapted for dam purposes, we cannot agree with the defendant's contention that the record is entirely devoid of proper evidence to support the reduced verdict.

One other matter remains to be considered. When the Common Pleas jury was sworn, on October 19, 1915, a view of the premises in controversy was permitted. At that time, the trial judge said to the jurors, inter alia, "You simply go on the land to view the ground and the location, so that you may intelligently understand the evidence that will be introduced in court, and not for the purpose of deciding the case from what you see there or from what you may hear, but for the purpose of viewing the location and having an intelligent understanding of the evidence that is produced on the trial here in court." No exception was taken to these remarks; but, on October 23, 1915, after the trial had been concluded, the defendant took a general exception to the charge of the court, from which the following is an excerpt: "You went upon the ground, inspected the dam and the premises of the plaintiff and those portions taken by the defendant from the plaintiff for the dam purposes, not that you would use what you saw in the shape of substantive evidence from which you would find the amount of damages, but in order that you would understand and appreciate the evidence produced here in court by both sides." On this appeal, complaint is made of these instructions in full. While there may be some doubt of the defendant's right, under his general exception to the charge, to assign the first above quoted excerpt as error, yet the substantial question sought to be raised is fully covered by the second, and that is: did the trial judge unduly limit the purpose and possible effect of the personal inspection of the premises made by the jury?

A determination of the question just stated requires an examination of our rulings upon the point at issue, in

other like cases. In Hartman v. Penna. Schuylkill Val. R. R. Co., 22 W. N. C. 84, 85, we said: "Undoubtedly, when a jury have viewed and examined the premises, their own observation......is just as good as that of any of the witnesses, and whilst they are not to disregard the testimony produced on the trial, they are, nevertheless, not required to repudiate the evidence of their own senses." In Flower v. Baltimore & Philadelphia R. R. Co., 132 Pa. 524, 526, the trial judge instructed the jury: "You have seen the land, but you are not to take for granted that you can, because you have seen it, be witnesses, or render a verdict upon your own judgment from that view; the law does not permit that. You are only permitted to view the land, that you may the better understand the testimony. The value of the land you are to ascertain from the witnesses. Whatever assistance a view may have been to you in adopting a value, or in giving credit to the witnesses, you are entitled to look at and consider......, and, after you have weighed all the evidence, aided by your own view of the premises, you are to give the plaintiff......compensation......, if you find it injured." On appeal we said that we saw no error in these instructions, and added: "It was never intended that the view of the jury should be substituted for the evidence, and that they should make up their verdict from the view in disregard thereof. The object of the view is, as was correctly said by the learned judge, to enable them the better to understand the testimony." In Shano v. Fifth Ave. & High St. Bridge Co., 189 Pa. 245, 247, we said: "The jurors had examined the property, and from what they saw and knew, as well as from the testimony of witnesses, they were to form their own judgment; the expert testimony was only an aid in enabling them to reach a conclusion." In Gorgas v. Philadelphia, Harrisburg & Pittsburgh R. R. Co., 144 Pa. 1, 13, we stated: "The true rule, in such cases, is believed to be that the jury in estimating the damages shall consider the testimony as given by the witnesses, in con-

nection with the facts as they appear upon the view; and upon the whole case, as thus presented, ascertain the difference between the market value of the property immediately before and immediately after the land was taken." Finally, in Roberts v. Philadelphia, 239 Pa. 339, 344, 345, no testimony was offered by the defendant to meet the evidence of the plaintiff's witnesses as to the character and value of the property in controversy, yet the jurors were instructed in such a manner that, on appeal, we were led to say: "The jury could have understood from these instructions only that having seen the premises for themselves, they were at liberty to substitute what they saw for the evidence in the case." We held that this was error, citing Flower v. Balto. & Philadelphia R. R. Co., supra, and Hoffman v. Bloomsburg & Sullivan R. R. Co., 143 Pa. 503, 512, and observed: "The true rule is that the jury may resort to the knowledge acquired by a view of the premises only for the purposes of understanding the testimony of the witnesses and of determining the relative weight of conflicting testimony as to the value of the property." When the rule thus announced is kept in mind, it is apparent that the record brought before us by the appellant's assignments shows no reversible error, either in the matter now under discusssion or in any other respect.

The assignments are all overruled and the judgment is affirmed.