Garella, Appellant, *v.* Redevelopment Authority.

182

Argued October 7, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William H. Mendlow,* for appellant.

*Sylvan Libson,* for appellee.

*Emil W. Herman,* with him *Rothman, Gordon and Foreman,* for appellee.

OPINION BY MR. JUSTICE JONES, January 8, 1964:

Theodore A. Tsuris (Tsuris) owned certain property located on North Duquesne Avenue, Duquesne City, Allegheny County, upon which property, inter alia, was a three-story brick building, a portion of the floor of said building being leased for a ten year term commencing May 1, 1957 to Frank Garella (Garella). The leased premises, rented at $170 monthly, were used by Garella—a liquor licensee—for restaurant purposes.

By two resolutions—February 26, 1959 and September 28, 1959—the Redevelopment Authority of Allegheny County (Authority) condemned Tsuris' entire property. Subsequent to the condemnation, viewers, after hearing, filed a report awarding $72,000 to Tsuris and $6,400 to Garella. From that award, all three parties—Tsuris, Garella and the Authority—appealed to the Court of Common Pleas of Allegheny County. Three separate actions were filed in that court: Garella (lessee) v. the Authority (3677 July Term, 1961), Tsuris (owner) v. the Authority (3722 July Term, 1961) and Tsuris and Garella (owner and lessee) v. the Authority (3681 July Term, 1961). The three cases were consolidated for trial and, after a trial before a judge and jury, three separate verdicts were rendered, the overall effect of said three verdicts being that the jury awarded to Tsuris, the owner, damages plus detention allowance totalling $75,075 and no damages to Garella, the lessee.[1]

In all three actions, Garella moved for a new trial. The Court en banc, by a three-one vote with WEISS, J., dissenting without opinion, dismissed Garella's motions and directed the entry of judgments on the verdicts. From each judgment, Garella has appealed.

In Garella's appeal from the judgment entered in *Tsuris v. Authority,* Tsuris has filed a motion to quash the appeal assigning three reasons: (a) since

---

[1] The verdicts were worded: in *Garella v. Authority,* "we . . . find no award to [Garella] or a verdict in favor of [the Authority]"; in *Tsuris v. Authority,* "we . . . find $65,000.00 award plus detention damages in the sum of $10,075.00 (or 15½%) for total of $75,075.00. To be satisfied upon payment of verdict at 3681 July Term, 1961:" in *Tsuris v. Garella v. Authority,* "we . . . find $65,000.00 award to [Tsuris] plus detention damages in the sum of $10,075.00 (or 15½% for a total of $75,075.00). No Bonus value to [Garella]. Or a verdict in favor of [the Authority] as to claim of [Garella], Tenant."

neither Tsuris nor the Authority has appealed; the judgment is final and unappealable; (b) since the Authority has not taken an appeal, it has elected to treat Tsuris' claim as a unit and not triable with Garella's claim under the Act of 1937;[2] (c) Garella lacks standing to appeal. In large measure, Tsuris relies upon *Arnold v. Allegheny County,* 332 Pa. 227, 2 A. 2d 763. In *Arnold,* the owner and the lessee in separate actions claimed damages from the county in condemnation proceedings; the two cases were tried together under the 1937 Act, supra, and the jury fixed the total amount of damages at $29,750 and awarded $27,250 to the owner and $2,500 to the tenant. The county appealed only from the judgment entered on the verdict in favor of the owner seeking to argue on that appeal two questions: (a) whether the county could first show the value of the entire property "before and after" and the total damage before apportioning the total damages?; (b) whether, the Act of 1937, supra, required initial proof and determination of total damages before such damages could be apportioned?[3] This Court held that, since the claim of the lessee had become final by the unappealed judgment, there remained on the record only the claim of the owner against the county and, therefore, the Act of 1937, supra, was no longer applicable and, by permitting the lessee's judgment to become final by not appealing therefrom, the county had elected to treat the owner's claim as a unit not triable under the Act of 1937, supra. We quashed that appeal.

---

[2] Act of July 1, 1937, P. L. 2667, 26 PS §44, which provides, inter alia, that in all condemnation proceedings where the owner and owner's lessee or lessees are claimants for damages, "all such claims shall be heard or tried together . . . ."

[3] With the exception of the question in the case at bar relating to the admissibility of certain evidence, these questions are substantially similar to the main question in the instant appeals.

Both Garella and the Authority oppose the present motion to quash the one appeal. At first blush, it would appear that the motion to quash should be granted since Garella was neither a party of record nor an intervenor in the action. However, an examination of the record reveals a unique situation which differentiates the case at bar from *Arnold* and contraindicates *Arnold's* apposition herein. While there are separate suits by the owner and the lessee, respectively, against the Authority, there is also a third suit wherein both the owner and lessee are not *only* joined as plaintiffs but their separate claims are presented in a joint action. In this *joint* suit of the owner and lessee against the Authority the jury returned what might be termed the "master" verdict in which the jury disposed of *both* claims. In the suit of the owner against the Authority, the jury specifically provided that that verdict—the only other verdict making an award against the Authority—was "to be satisfied upon payment of verdict at 3681 July Term, 1961 [i.e., the *joint* suit of the owner and lessee]". The verdicts in the *separate* suits of the owner (3722 July Term, 1961) and of the tenant (3677 July Term, 1961) simply reiterated the conclusion reached by the jury in the joint suit of both the owner and lessee against the Authority (3681 July Term, 1961). All three suits were tried together and between all three suits there existed a relative dependence so that, strictly, it cannot be said that the Authority, by not appealing, elected to treat the two claims as separate units. In our view, the rationale of *Arnold* is presently inapposite on the unique facts of the instant record. Tsuris' motion to quash must be denied.

These appeals present two main issues: (a) whether the trial court committed error in allowing the condemning Authority's counsel to cross-examine the owner's expert witnesses as to whether, in arriving at their

valuation figures, they considered the value of *all* the interests, including the lessee's interest, in the property; (b) the propriety of the trial court's instructions to the jury on the application of the Act of 1937, supra, to a condemnation proceeding which involved the multiple interests of the owner-lessor and his lessee.

At trial, the owner called several real estate experts who gave, upon direct examination, their opinions as to the fair market value of Tsuris' interest in the property at the time of the taking. The witnesses were asked upon cross-examination by counsel for the Authority whether the value which they had given upon direct examination included all interests in the property. Over objection, the trial court permitted such questioning and, in so doing, no error was committed.

The Authority was entitled to ascertain exactly what was included in the opinions as to value expressed by the owner's witnesses and the jury was entitled to know whether the valuations given by such witnesses include only the owner's interest or the interests of both the owner and the lessee. To prove the fair market value of property as a whole evidence as to the reasonable rental value thereof is admissible and such evidence may then be used by experts as a factor in determining their opinions as to reasonable value of the real estate as a whole: *Harris v. Railroad Co.,* 141 Pa. 242, 253, 21 A. 590; *Davis v. Penna. R. R.,* 215 Pa. 581, 585, 64 A. 774; see Orgel, Valuation under Eminent Domain, (2nd ed.), Vol. 1, §176, p. 699.

It is obvious that the object of this cross-examination was to clarify the import of the expert witnesses' direct examination and to ascertain the factors which such witnesses considered in arriving at their valuation figures. Such cross-examination was proper. Moreover, it is to be noted that the witnesses subjected to the challenged cross-examination were not called by the lessee, the objecting party. As the court below well stated: "The Act of 1937, supra, requires the jury to

fix the total amount of damages and to apportion the same among the several claimants. Unless the Act is to be ignored the jury is entitled to know if the figure quoted by a witness is the total value of all interests, or that of less than all, in the estate. In the case at bar if the disputed testimony had been excluded, the jury would have had before it sums quoted by the witnesses for the owner as being the estimated damage to his interest. This, however, does not give the true picture. The real estate experts evaluated all interests in the property and found that the owner had sustained injury, but that the tenant had not been damaged. It was necessary that the questioned testimony be placed before the jury. Otherwise, that body may have had a distorted notion of the evidence."

The Act of 1937, supra, in pertinent part, provides that the jury ". . . shall fix, *first*, the total amount of damage to the property . . ., and *second*, the apportionment, distribution, or division of the total damages so awarded between or among the several claimants therefor." (Emphasis supplied). It is Garella's argument that: "There are two major contentions as to the proper measure of damages in a landlord and tenant case. The first is the 'unencumbered fee' theory" which "holds that the jury shall first determine the entire value of the fee and then subtract from this any interest which the tenant may have, giving the balance to the landlord. The second theory is that each party has his separate interest, and that the jury determines these interests separately. The total of the two constitute the entire award." Garella urges that the second view should be the law in this Commonwealth.

The "unencumbered fee" theory holds that the total damages allowed the owner and the lessee cannot exceed the fair market value of the property in an unencumbered (i.e., subject to no lease) condition. The Act of 1937, supra, does not so provide. The statute does not employ the term "fair market value" but rather

"the total amount of damage to the property in question". The owner has an interest and the lessee has an interest; such interest is a "property interest" and the injury to each such interest constitutes "damage". The fallacy of the "unencumbered fee" theory is readily demonstrated. For example, assume the existence of a worthless piece of property and assume that a financially responsible lessee, in a moment of stupidity, enters into a 20 year lease calling for a net rental of $10,000 per year. The present worth of the right to receive $1 per year for 20 years (discounted at 6%) is $11.47 and, therefore, the right to receive $10,000 per annum during the 20 year lease would have a present worth of $114,700. If, immediately after the execution of the lease, the property is condemned, the owner will have suffered a loss of at least $114,700 for which he should be entitled to compensation and, yet under the "unencumbered fee" theory, the owner would receive nothing since the land by hypothesis had no fair market value. The Act of 1937, supra, clearly does not adopt the "unencumbered fee" theory.

If we accept Garella's argument that the 1937 statute adopts the "aggregate of the interests" theory, the statute would require the function of the jury to be *first* a separate and distinct determination of the damage sustained by the owner and that sustained by the lessee and *second* a determination of the total damage by *adding together* the damage to the owner and the damage to the lessee. Such a construction of the statute amounts to a distortion of its terms for the statute *clearly* states that the jury *first* fix the total amount of damage to the property and *then* make an apportionment of such total amount of damages between the owner and the lessee as their respective interests might appear. *Getz v. Philadelphia & Reading Railroad Co.*, 105 Pa. 547, relied upon by Garella, does not support the "aggregate of interests" theory.

The 1937 statute adopted neither the "unencumbered fee" nor the "aggregate of interests" theory, i.e., neither the "subtract from" nor the "add on" theory. The language of the statute clearly delineates the duty of the jury: *first,* to fix the *total amount of damages* to the property and, *second,* to apportion such damages between the owner and the lessee. This construction harmonizes with the evident underlying purpose of the statute—to render certain that the condemnor pays 100% of the damages which it has caused by the taking, no more and no less.[4]

In its opinion the court below correctly stated the proper construction of the statute. In its instructions to the jury, the court below quoted the statute as providing that the jury shall fix, first, the *fair market value* of the property and then make an apportionment between the owner and the lessee. However, if the charge is read in its entirety and not out of context, the charge adequately conveyed to the jury the idea that it must fix the total amount of the damages[5] to the property interests of both the owner and the lessee. The jury could not have been confused by the charge. The court fairly presented the issues to the jury without any prejudice to the rights of the lessee.

After a review of this record, the failure of the jury to award any damages to the lessee is well understandable. Garella's evidence fell woefully short of proving any damage to his interest. We fully agree with the court below that the fact that Garella was his only

---

[4] "Just compensation" under the Constitution refers to that which the property owner has lost, not what the condemnor has gained: *Wadsworth v. Manufacturer's Water Co.,* 256 Pa. 106, 100 A. 577. On this subject, see: Orgel, Valuation under Eminent Domain, (2nd ed.), Vol. 1, p. 461, §109; Lewis on Eminent Domain, (3rd. ed.), Vol. 2, §716, p. 1253.

[5] The *total amount of the damages* cannot exceed *the fair market value* of the property.

witness as to value, the fact that he was not familiar with rent paid by lessees in comparable situations and the fact that, within a two block radius of Garella's restaurant, there were eleven other restaurants and two clubs could well have persuaded the jury that there was no "bonus" value in Garella's lease.

Judgments affirmed.