In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right-of-Way for Legislative Route 02302 etc. Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Argued May 9, 1980, before Judges WILKINSON, JR., CRAIG and WILLIAMS, JR., sitting as a panel of three.

479

*Jeffrey L. Giltenboth,* Special Assistant Attorney General, with him *Ward T. Williams,* Chief Counsel, and *Edward G. Biester, Jr.,* Attorney General, for appellant.

*William P. Bresnahan, O'Donnell, Bresnahan, Caputo & Capristo,* for appellees, Samuel J. Alioto & Anne K. Alioto, his wife.

*Samuel P. Kamin, Kamin & Mandell,* for appellee, Jack Berman, trading as Valet Boy Cleaners.

*William H. Markus,* with him *Leonard M. Mendelson, Hollinshead & Mendelson,* for appellee, Jerome Danenberg, trading as Berkeley Hills Pharmacy.

OPINION BY JUDGE WILLIAMS, JR., November 7, 1980:

The Pennsylvania Department of Transportation (Department) has appealed from an order of the Court of Common Pleas of Allegheny County quashing

part of the Department's appeal from a viewers' report in an eminent domain proceeding. The lower court concluded that the Department's appeal did not comply with the requirements of Section 516(a) of the Eminent Domain Code (Code)[1] insofar as two tenants and the co-owners of an easement were concerned; and the lower court entered final judgment in favor of each of those claimants on motion.

In March 1974, the Department filed a declaration of taking to condemn a portion of land owned in fee simple by N. H. Weidner, Inc.[2] The land is located in Ross Township, Allegheny County, and was condemned for highway purposes.

In November 1974, the fee owners petitioned for the appointment of a board of viewers, and designated as other interests in the property the leasehold of a Jack Berman, trading as "Valet Boy Cleaners", and the leasehold of a Jerome Danenberg, trading as "Berkeley Hills Pharmacy." In February 1976, the petition for viewers was amended to include Samuel J. and Anne K. Alioto, husband and wife, as owners of a right-of-way over the condemned land. Each of these parties claimed for damages to their distinct and separate interests in the condemned property.

In April 1978, prior to the end of proceedings before the board of viewers, the Department filed a written request for findings of fact and conclusions of law.[3] In that request the Department expressly acknowledged and designated the two tenants and the easement owners as being "additional condemnees."

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-516(a).

[2] The Department condemned about 4,559 square feet of a tract containing about 42,044 square feet.

[3] Apparently the board of viewers did not formally pass on the request. However, the Department did not specifically assign that as error in its appeal to the lower court.

On September 29, 1978, the viewers filed their report, which in pertinent part declared that:

> [T]he Viewers do now estimate and determine that the said N. H. Weidner, Inc., have (sic) sustained damages in the sum of SEVENTY-ONE THOUSAND FIVE HUNDRED and no/100ths—($71,500.00) DOLLARS. . . .
> Distribution of the Award is as follows:

| | |
|---|---|
| WEIDNER, INC. | $42,000.00 |
| JACK BERMAN, TRADING AS VALET BOY CLEANERS | $10,000.00 |
| JEROME DANENBERG, TRADING AS BERKELEY HILLS PHARMACY | $ 7,500.00 |
| SAMUEL J. ALIOTO and ANNE K. ALIOTO, His Wife | $12,000.00 |
| TOTAL | $71,500.00 |

On November 2, 1978, beyond the thirty-day appeal period set by law, the Department appealed to the lower court from the viewers' report.[4] The only condemnee named in the caption of the Department's appeal was the fee owner. More important, the Department's appeal described the "interest of the condemnee" only as "ownership in fee simple." The appeal did not, within its four corners, name the tenants and

---

[4] Section 515 of the Code, 26 P.S. §1-515, formerly allowed a thirty-day appeal period, after the filing of the viewers' report. The appeal period is now governed, as it was for this case, by Section 5571(b) of the Judicial Code, 42 Pa. C. S. §5571(b), and still remains at thirty days. However, under the Judicial Code the appeal period is measured from the entry of the order appealed from. No party in this case objected to the late filing, because the Department asserted that it was late in receiving notice from the board of viewers. Because of the factual and legal issues raised by that contention, we do not dispose of this case on the ground of the untimely filing of the appeal *as taken*.

easement owners, or even indicate the existence of their interests.

More than three months later, in February 1979, the tenants and the easement owners petitioned the lower court to enter final judgments as to the damages which the viewers had granted them. They asserted that the Department's appeal was not effective to appeal the awards for their interests, because neither they nor their interests had been designated in the Department's appeal. The lower court granted the petitions: it quashed the appeal as it related to those parties and entered final judgment.[5] The Department's appeal to this Court followed.

The term "condemnee" under the Eminent Domain Code "means the owner of a property interest taken, injured or destroyed, but does not include a mortgagee, judgment creditor or other lienholder."[6] Clearly, the two tenants and the easement owners in this case fall within that definition. They were "condemnees." Therefore, regarding the condemned real estate, the fee owner, the tenants and the owners of the easement were all "condemnees."

To perfect an appeal from a viewers' report, Section 516(a) of the Code requires that the appellant set forth in its appeal, *inter alia,* the name of the appellee, a brief description of the property involved and *the condemnee's interest therein.* Because in this case there were several condemnees, it became incumbent upon the Department to set forth in its appeal the interest of each one of them in the property involved. In short, the Department did not satisfy Section 516(a) by merely designating one of the condemnees, the owner of the fee simple. By not designating the interests of the two tenants and the owners of the easement,

---

[5] Pursuant to Section 515, 26 P.S. §1-515.

[6] Section 201(2), 26 P.S. §1-201(2).

the Department did not perfect an appeal as to those condemnees.

It is our conclusion that this case is governed by our decision in *Exxon Corp. v. Department of Transportation*, 10 Pa. Commonwealth Ct. 301, 312 A.2d 121 (1973). In the *Exxon* case the board of view had made an award to the fee owner and another award to a tenant, for the condemnation of a single tract of land. Each condemnee had been assigned a different docket number by the prothonotary. The condemnor's appeal from the viewers' report named only the fee owner as the condemnee; the only interest designated was "ownership in fee simple"; and the only docket number included was that of the fee owner.

In *Exxon* this Court held that the condemnor's appeal was ineffective under Section 516(a) of the Code to appeal the viewers' award to the tenant-condemnee, and should have been quashed. In so holding, we concluded that the condemnor's appeal violated the requirements of Section 516(a) by not naming the tenant as an appellee, not setting forth the tenant's interest and not referring to the tenant's docket number. Although in the case at bar there was no omission of a relevant docket number, the instant condemnor's appeal suffered from two serious violations of Section 516(a): the tenant and easement condemnees were not named and their interests were not set forth. The fact that *Exxon* involved three defects instead of two does not negate the applicability of that decision to the instant case. The principle of the *Exxon* case is that a condemnor's appeal from a viewers' report is subject to be quashed for substantive noncompliance with Section 516(a). The failure of the condemnor in this case, on appeal from the viewers' report, to include the names and interests of all the condemnees designated in that report was substantive noncompliance with Section 516(a) of the Code.

Before this Court, the Department asserts that the board of viewers made but a *single award*, of $71,-500.00, and that it was for the damages to the *condemned property* as a whole. From that assertion the Department further argues that its appeal to the lower court, naming the fee owner as condemnee, automatically included all the distributees of the "total damages." We reject that argument: because, we reject the premise upon which it is based.

Section 507(a) of the Code provides in pertinent part as follows:[7]

[T]he award of the viewers or the verdict on appeal from the viewers shall *first fix the total amount of damages for the property,* and *second, apportion the total amount* of damages between or *among the several claimants entitled thereto.* (Emphasis added.)

The viewers in this case performed the duty imposed upon them by Section 507: they *first fixed the total amount of damages* for the condemned real estate as a whole; and *then they apportioned that amount* among the several claimants, as reflected in the schedule of distribution.

Although the viewers' report could have been drafted with greater technical accuracy, it is clear that it did what Section 511(7) of the Eminent Domain Code requires of a viewers' report where there are several interests in the condemned property:[8] the report stated the total amount of damages for the property itself and the distribution of those damages among the claimants.

The viewers' report did not make *one award,* but made *several awards* to the several claimants as apportioned from the total general damages of $71,-

---

[7] 26 P.S. §1-507(a).

[8] 26 P.S. §1-511(7).

500.00. Indeed, the $71,500.00 figure was not an *award* as such, because that amount was not granted to any particular claimant or interest. The $71,500.00 was the mathematical basis upon which apportioned awards were made to the various condemnees claiming for damages to their separate interests.

Conception of the individual distributees as having their own separate *awards* from the viewers finds direct support in Section 515 of the Code.[9] That Section, addressing an appeal by a "condemnee having less than the entire interest in the condemned property", speaks of "the award to him."

Furthermore, whether the instant condemnor perceived the viewers' report as making one award or as making several, that did not alter the express demand of Section 516(a) that an appeal from the report set forth the condemnee's interest. And, we construe that requirement to mean the interests of all condemnees involved, be they fee owner, tenant or easement holder.

In this case the initial petition for viewers and its amendment apprised the Department of all the interests here involved. Additionally, the Department itself expressly recognized the tenants and the co-owners of the easement as "additional condemnees" in its written request for findings of fact and conclusions of law, filed prior to the end of the viewers proceedings. The Department also should have recognized the clear mandate of Section 516(a) that those several interests be designated in its appeal from the viewers' report.

Notwithstanding its noncompliance with Section 516(a), the Department here urges that to leave standing the final judgments in favor of the other claimants will be unfair to the fee owner. The Department contends that if the fee owner is the sole claimant in the appeal proceedings before the lower court, the fee

---

[9] 26 P.S. §1-515.

owner will be exposed to not receiving "just compensation" for the damages to its fee interest. Specifically, the Department envisions the possibility of the trial court fixing *total damages* for the property at an amount lower than that set by the viewers. From that possibility the appellant asserts that the fee owner would be exposed to having the court-determined total damages consumed by the amounts now finalized in favor of the other claimants. We see no such specter.

Upon appeal to the lower court the matter will be heard *de novo*. The trial court will be required to follow the direction of Section 507 of the Code, as was the board of viewers. The trial court will, *de novo,* first fix the total amount of damages to the condemned property and then apportion that amount among the various interests. In so doing, the court will determine the share of the *de novo* total damages to which the fee owner is entitled. The *interests* of the other claimants will remain a factor in the *de novo* proceedings for purposes of ascertaining the apportioned share of the fee owner. That is the same position the fee owner would be in had the other claimants effectively been made actual parties to the *de novo* proceedings. Although the interests of the tenants and easement owners will be present in the proceedings before the trial court, it will be solely to permit apportionment of the fee owner's share, and not to determine the amount of compensation which these other interests will actually receive. That amount was set when final judgment was entered in their favor.

The above approach to the *de novo* proceedings finds support in the decision of our state Supreme Court in *Philadelphia Redevelopment Authority Appeal,* 435 Pa. 370, 257 A.2d 520 (1969). That case involved the claims of the fee owner and two easement holders, as to a single parcel of condemned realty. The condemnor settled with the easement holders prior to

the appointment of viewers; as a result they were not actual claimants before the viewers or the trial court in the *de novo* proceedings. The trial court determined the total damages to the condemned property and awarded that total amount to the fee owner because he was the only claimant before it. The Supreme Court remanded the case for apportionment.

In remanding, the Supreme Court in *Philadelphia Redevelopment Authority Appeal* held that even though the claims of the easement holders had been settled, their *interests* should have remained a factor in the *de novo* proceedings in order to apportion the total damages and to arrive at the fee owner's proper apportioned share of the total damages. Whether the claims of the other interests are fixed by private settlement or by final judgment, the effect on subsequent *de novo* proceedings should be the same.

In the case at bar, the fee owner and the other claimants each had an interest in the condemned property; and the injury to each of those interests constituted "damage". *Garella v. Redevelopment Authority*, 413 Pa. 181, 196 A.2d 344 (1964). For this Court to condone the derelictions that attended the Department's appeal from the viewers' report, would nullify the requirements set by the legislature in Section 516 (a) of the Eminent Domain Code. The condemnor could ignore those provisions with impunity and thereby obtain a license to delay the payment of just compensation to the owners of property interests taken, injured or destroyed by governmental power.

Our scope of review of a lower court's decision in an eminent domain case is limited to a determination of whether the court committed an abuse of discretion or an error of law. *Redevelopment Authority of Luzerne County v. Legosh*, 39 Pa. Commonwealth Ct. 90, 394 A.2d 1089 (1978); *Pidstawski v. South Whitehall Township*, 33 Pa. Commonwealth Ct. 162, 380 A.2d

1322 (1977).[10] In this case we find neither infirmity; therefore, we affirm the order of the court below.

ORDER

AND Now, the 7th day of November, 1980, the order of the Court of Common Pleas of Allegheny County at No. 1477 January Term, 1975, sur No. 3041 April Term, 1974, and entered on July 6, 1979, is affirmed.

[10] Of course, where the lower court makes findings of fact, we have to determine whether they were supported by competent record evidence. *City of Philadelphia v. Sterling Metalware Co.*, 48 Pa. Commonwealth Ct. 313, 410 A.2d 90 (1980).