540 A.2d 5

Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* Frank Cobb and Processing Machinery and Supply Company, Appellees.

Argued February 23, 1988, before President Judge CRUMLISH, JR., and Judges McGINLEY and SMITH, sitting as a panel of three.

*Thomas J. Hines,* Assistant Counsel, with him, *John L. Heaton,* Chief Counsel, for appellant.

*Emil L. Iannelli,* for appellees.

Opinion by President Judge Crumlish, Jr., April 14, 1988:

The Department of Transportation (DOT) appeals a Philadelphia County Common Pleas Court order denying its exceptions and post-verdict motions and entering judgment in favor of Frank Cobb and Processing Machinery and Supply Company (PMS). We affirm.

In 1968, the Secretary of Highways[1] condemned a parcel of land owned by Cobb's predecessor in title in order to construct an elevated portion of a limited access highway, commonly known as "I-95."[2] Buildings on the property were demolished and compensation was paid therefor. The area beneath the highway, since acquired by Cobb, is presently used by his lessee, PMS, for equipment storage.[3]

Pursuant to DOT's action to eject Cobb and PMS from the site, the common pleas court held that under the terms of the declaration of taking and the accompanying plans, DOT had acquired only an aerial easement plus a surface easement limited to the extent necessary to accommodate piers and other appurtenances. The court specifically relied on *Cavalier Appeal*, 408 Pa. 295, 183 A.2d 547 (1962), a factually similar case, in which our Supreme Court held that the Commonwealth had condemned only so much of the condemnee's land as was necessary for support on the ground's surface together with an aerial easement taken for the right-of-way.

---

[1] Now the Secretary of Transportation.

[2] The Secretary of Highways is authorized to take property for the purpose of constructing limited access highways pursuant to Section 8 of the Act of May 29, 1945, P.L. 1108, *as amended*, 36 P.S. §2391.8.

[3] The parties have stipulated that PMS' current storage rise does not interfere in any way with DOT's current maintenance of the highway.

DOT concedes that *Cavalier* remains valid precedent but attempts to distinguish it factually. DOT insists that while the highway plans in *Cavalier* were silent as to the nature and extent of the estate acquired by the Commonwealth, the plans in this case clearly designate that the Commonwealth acquired a full surface easement as well as a specific aerial easement. We disagree.[4]

The title page to the highway plans discloses that, "The estate to be acquired by the Commonwealth encompasses a surface easement unlimited in vertical dimension except in those areas, if any, where the detail plan designates an exception."

As in *Cavalier* the nature of the property interest to be acquired was expressly limited to an *easement* for highway purposes, as opposed to a taking in fee.[5] Further, although the term "surface easement unlimited in vertical dimension" suggests a full surface easement extending infinitely upward, it is equally evident that exceptions to this easement were to be designated in the highway plans. Those plans, and the resulting highway structure itself, clearly demonstrate an elevated limited access highway crossing over Cobb's property with only the supporting piers physically touching the surface. In light of the principle that property may be taken by eminent domain only to the extent reasonably required for the purpose for which the power is exercised, *Bachner v. City of Pittsburgh*, 339 Pa. 535, 15 A.2d 363 (1940),

---

[4] Our scope of review in an eminent domain case is limited to determining whether the trial court committed an abuse of discretion or an error of law. *Appeal of PennDOT*, 54 Pa. Commonwealth Ct. 478, 422 A.2d 711 (1980).

[5] Although an aerial easement for the roadway itself is not explicitly mentioned on the title page of the detail plans, an aerial easement is referred to in the plans' technical drawings. Such an easement was also recognized in *Cavalier*.

we find it a reasonable inference from these facts, that the areas left unaffected by the highway were meant as exceptions to the surface easement taken by the Commonwealth.

Of further import are certain restrictions contained in the detail plans which limit the use of property beneath the highway.[6] The limitations unequivocally con-

---

[6] The following restrictions appear on page three of the plans:

Where the estate acquired is limited to an aerial easement plus a surface easement unlimited in vertical dimension for the accommodation of piers and other appurtenances, the following limitations shall be imposed on the use of the property beneath the area affected by the aerial easement.

1. No use shall be made of the property which shall endanger the structure or the health, safety and welfare of the traveling public.

2. No flammable, explosive, dangerous or hazardous material shall be allowed to be placed or stored beneath the area affected by the aerial easement.

3. No buildings or other facilities shall be constructed beneath the area affected by the aerial easement without the property owner obtaining prior authority of the Commonwealth of Pennsylvania and the United States Bureau of Public Roads and that, if and when such authority is granted the plans for the building and construction methods shall be subject to the approval of the Commonwealth of Pennsylvania and the United States Bureau of Public Roads.

4. Any substantial change in land use made subsequent to the execution of the easement will be subject to approval by the Commonwealth of Pennsylvania and the United States Bureau of Public Roads.

5. No interference shall be made with the right, which is in the Commonwealth of Pennsylvania to enter upon the property beneath the area affected by the aerial easement, for the purpose of inspection, maintenance, repairs, reconstruction or alteration of the structure and other appurtenances.

template the condemnee's continued use of that property so long as there is no interference with the public interest or DOT's maintenance of the highway. We have previously noted that DOT has stipulated to the unobtrusive nature of the equipment storage use. Therefore, we agree with the common pleas court's conclusion that DOT has not acquired a full surface easement in this instance. Accordingly, it has no right to eject Cobb or PMS from the property.

DOT further contends that the building demolition that took place here differentiates this case from *Cavalier* because it was necessary to acquire a complete surface easement in this congested urban setting to facilitate the highway's construction.[7] However, that the full surface was used during construction is not determinative inasmuch as it can be reasonably presumed that similar construction activities, temporary in duration, took place in *Cavalier*.

Moreover, despite DOT's insistence that the property owners are permitted a windfall here, there is no evidence that the compensation paid by the Commonwealth to Cobb's predecessor in title was in return for the relinquishment of any property right *other* than that specified in the declaration of taking, *i.e.*, the limited easement right and the building demolition.

Finally, although we can appreciate DOT's concern over its potential liability inherent in a condemnee's continuous use of property beneath a state highway, we

---

[7] Although DOT cites *McCracken v. City of Philadelphia*, 69 Pa. Commonwealth Ct. 492, 451 A.2d 1046 (1982) (demolition and reconstruction activities on *abutting* property amounted to exceptional circumstances depriving owner of the beneficial use and enjoyment of his property, thus constituting a *de facto* taking), the instant matter is easily distinguished as the inquiry here involves the extent of an express condemnation of property as identified in a declaration of taking.

merely point out that DOT could have avoided this dilemma by specifying at the time of the condemnation that the estate to be taken was in fee or an unlimited surface easement without exception.

The trial court's order is affirmed.

ORDER

The Philadelphia County Common Pleas Court order, No. 931 June Term 1982 dated October 15, 1984, is affirmed.

ORDER

Upon consideration of appellant's application for reargument, and appellees' answer in opposition thereto, said application is interpreted as an application for reconsideration, and the application is granted.

The final full paragraph in the opinion of the above-captioned case is amended to read as follows:

Finally, although we can appreciate DOT's concern over its potential liability inherent in a condemnee's continuous use of property beneath a state highway, we merely point out that DOT could have avoided this dilemma by specifying at the time of the condemnation that the estate to be taken was an unlimited surface easement without exception. We further note that DOT can avoid such uncertainty in the future by exercising its authority to acquire a fee simple interest pursuant to 71 P.S. §513(e)(1). *See Ezy Parks v. Larson,* 499 Pa. 615, 454 A.2d 928 (1982).

The trial court's order is affirmed.