576 A.2d 75

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Petitioner,**

**v.**

**Robert J. BROWN, Respondent.**

**Robert J. BROWN**

**v.**

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA FISH COMMISSION and Commonwealth of Pennsylvania, Department of Transportation.**

**Petition of COMMONWEALTH of Pennsylvania, PENNSYLVANIA FISH COMMISSION.**

Commonwealth Court of Pennsylvania.

Argued April 3, 1990.

Decided May 14, 1990.

Reargument Denied July 18, 1990.

Petition for Allowance of Appeal
Denied Jan. 7, 1991.

William J. Cressler, Asst. Chief Counsel, with him, John L. Heaton, Chief Counsel, for petitioner/respondent, Dept. of Transp.

Dennis T. Guise, Chief Counsel, for petitioner, Pennsylvania Fish Com'n.

Norman J. Cowie, Thomson, Rhodes & Cowie, Pittsburgh, for respondent, Robert J. Brown.

Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The Pennsylvania Department of Transportation (DOT) and the Pennsylvania Fish Commission (Commission) appeal from an order of the Board of Property (Board) which granted Robert J. Brown (Brown) entitlement to certain land located underneath a portion of the Allegheny Valley Expressway (Expressway), in North Buffalo Township, Armstrong County.  We affirm.

The facts are as follows.  During 1969 and 1970, DOT condemned approximately 3.66 acres (subject property) from Brown's predecessor in title.[1]  The purpose of the

1. On December 24, 1979, and later corrected on January 21, 1984, Brown acquired by deed the subject property, which was subject to DOT's easement.

condemnation was for the construction of an elevated limited access highway supported by seven bridge piers. The condemnation plan title page designated "[t]he estate to be acquired by the Commonwealth encompasses a surface easement unlimited in vertical dimension except in those areas, if any, where the detail plan designates an exception." Brown's predecessor in title received compensation for the subject property following a jury trial from an appeal of an award of a Board of Viewers.

In 1976, DOT completed the Expressway. Soon thereafter, a Commission representative contacted DOT, inquiring about the possibility of leasing the subject property for the purpose of constructing a parking lot, a boat launch/withdrawing ramp and associated facilities. On July 11, 1978, DOT and the Commission entered into a lease as to the subject property. By June, 1980, the Commission had completed construction on the site.

In 1985, Brown filed an action to quiet title and for ejectment against DOT and the Commission in regard to the subject property.[2] The basis of the action was that DOT had condemned a greater interest in the subject property than was necessary to accomplish the purpose for which the land was condemned. Additionally, Brown claimed that the lease entered into between DOT and the Commission was illegal. DOT and the Commission asserted that Brown's claim was barred by laches.

On May 23, 1988, after pleadings were closed and a stipulation of facts was submitted, a hearing was held before the Board. On September 14, 1989, the Board filed an order and opinion which stated that DOT had "acquired only an aerial easement over the subject property, except as to the ground surface upon which the piers are located," (Board's opinion at 6), relying upon *Department of Transportation v. Cobb*, 122 Pa.Commonwealth Ct. 276, 540 A.2d 5 (1988). The Board did not determine the legality of the lease between DOT and the Commission. Additionally, the

2. In 1983, Brown filed an action in federal court against the Commission which was dismissed.

Board found that Brown's "action [was] not barred by laches." (Finding of Fact No. 6). DOT and the Commission now appeal to this Court.[3]

DOT and the Commission argue that the Board erred as a matter of law in 1) basing its determination on *Cobb*, and 2) failing to be bound by a stipulation of the parties. We do not agree.

In *Cobb*, the Secretary of Highways[4] condemned a tract of land owned by Cobb's predecessor in title to construct an elevated portion of a limited access highway. Cobb's lessee used the area beneath the highway for equipment storage. DOT filed an action to eject Cobb and his lessee. The trial court held that DOT had acquired only an aerial easement plus a surface easement limited to the extent necessary to accommodate piers and other appurtenances. We affirmed, relying primarily on *Cavalier Appeal*, 408 Pa. 295, 183 A.2d 547 (1962), in which the Supreme Court held that the Commonwealth may only condemn as much land as is necessary for support on the ground's surface together with an aerial easement taken for the right of way.

DOT asserts that the holding of *Cobb* does not apply here because: a) Brown's predecessor in title was compensated for a surface easement; b) the title page of the condemnation plan itself states DOT acquired a surface easement; and c) the parties stipulated that the interest acquired was a surface easement.

First, DOT asserts that *Cobb* does not apply because of uncontroverted testimony which demonstrated that Brown's predecessor in title was compensated for a surface easement. DOT's expert, Jim Fink, testified as to his interpretation of the condemnation plans, being that DOT had acquired a surface easement over the entire property.

3. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

4. Now the Secretary of Transportation.

Further, Mr. Fink testified that the appraisal made for the Board of Viewers in 1969, was for a surface easement over the subject property.[5] Although no contradictory testimony was offered, the Board did not rely upon Mr. Fink's testimony, but instead relied solely on the condemnation documents which it found to give DOT a "surface easement where the piers touch the ground surface, and an aerial easement for the elevated portions of the highway." (Conclusion of Law No. 4). The Board, as fact-finder, *Pennsylvania Game Commission v. Keown*, 80 Pa.Commonwealth Ct. 471, 471 A.2d 937 (1984), is entitled to accept or reject the testimony of any witness, in whole or in part. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board*, 31 Pa.Commonwealth Ct. 590, 377 A.2d 1007 (1977). If evidence is such that a reasonable mind might accept it as adequate to support the conclusion reached, we are precluded from disturbing the finding even though this Court might have resolved the conflict differently. *Grabish v. Workmen's Compensation Appeal Board (Trueform Foundations, Inc.)*, 70 Pa.Commonwealth Ct. 542, 453 A.2d 710, (1982). Upon a review of the documents and testimony, we find that the evidence the Board relied upon was substantial and adequate to support the conclusion reached.

DOT further argues that *Cobb* is inapplicable because the title page of the condemnation plan states "the estate to be acquired by the Commonwealth encompasses a surface easement unlimited in vertical dimension *except* in those areas, if any, *where the detail plan designates an exception.*" (Emphasis added).

This is the same argument DOT employed in *Cobb* where the Court recognized that even though the title page of the highway plan designated a surface easement unlimited in vertical dimension that it was "evident that exceptions to

5. Unfortunately, there exists no record of the proceedings before the jury so as to verify the scope of the taking or upon what the jury based its verdict.

this easement were to be designated in the highway plans."
*Cobb,* 122 Pa.Commonwealth Ct. at 279, 540 A.2d at 7.

Here, the detail plan, including the title page is seven
pages in length. Following the title page, page 2 consists
of a map of the area without layout of the proposed
Expressway. Page 3 follows with a map describing the
limit of establishment and authority, public utilities, compu-
tation of overall length, list of equalities, general notes,[6]
and a "sketch showing estate to be acquired for a limited
aerial easement." Page 4 is a detailed map of three tracts
of land, including the subject property, showing the pro-
posed Expressway, and again setting forth the limit of
establishment and authorization with a note stating "the
estate to be acquired is limited to an aerial easement plus a
surface easement unlimited in vertical dimension for the
accommodation of piers and other appurtenances...."
Page 5 is a cross-section of the placement of the piers on

6. GENERAL NOTES: LEGAL RIGHT OF WAY WIDTHS OF EXIST-
ING ROADS
  1. No use shall be made of the property which shall endanger the
  structure or the health, safety and welfare of the traveling public.
  2. No flammable, explosive, dangerous or hazardous material shall
  be allowed to be placed or stored beneath the area affected by the
  aerial easement.
  3. No building or other facilities shall be constucted [sic] beneath
  the area affected by the aerial easement, without the property
  owner obtaining prior authority of the Commonwealth of Pennsyl-
  vania and the United States Bureau of Public Roads and that, if and
  when such authority is granted, the plans for the building and
  construction methods shall be subject to the approval of the Com-
  monwealth of Pennsylvania and the United States Bureau of Public
  Roads.
  4. Any substantial change in land use made subsequent to the
  execution of the easement will be subject to approval by the Com-
  monwealth of Pennsylvania and the United States Bureau of Public
  Roads.
  5. No interference shall be made with the right which is in the
  Commonwealth of Pennsylvania, to enter upon the property be-
  neath the area affected by the aerial easement, for the purpose of
  inspection, maintenance, repairs, reconstruction or alteration of the
  structure and other appurtenances.
  The notes on these drawings shall not be construed as limiting or
  interfering in any way with the present and future operation, use,
  maintenance, repair, renewal, change, addition, betterment or alter-
  ation of the railroad and its supporting facilities.

the subject property.  Page 6 includes a map of the tracts which abut the subject property and again sets forth the estate to be acquired as stated on page 4.  The final page is another cross-section of the placement of the piers.  We find that the Board properly found that the exceptions to the surface easement were well described in the detail plan.

DOT voiced its concern in regard to its potential liability inherent in the continued use of property beneath the Expressway by the condemnee.  As the Court so aptly stated in *Cobb:*

DOT could have avoided this dilemma by specifying at the time of the condemnation that the estate to be taken was an unlimited surface easement without exception.  We further note that DOT can avoid such uncertainty in the future by exercising its authority to acquire a fee simple interest pursuant to 71 P.S. § 513(3)(1).

*Id.* at 7–8, 540 A.2d at 281–282.

DOT argues that the Board also erred by improperly disregarding the submitted stipulation of facts No. 12. Stipulation of facts No. 12 states that DOT "acquired in this [subject property] an easement for *highway purposes,* defined on the plan as a surface easement unlimited in dimension.  *See,* Exhibit C, bottom middle of Sheet 1 [title page], above the signature block."  (Emphasis added.)  DOT asserts that the Board was bound by the stipulation and its failure to adhere to the stipulation is error.

The law in Pennsylvania is that parties may stipulate and be bound by their act as the law of the case, in all matters affecting them as long as the stipulation does not concern jurisdiction and prerogatives of the court.  *Foley Brothers, Inc. v. Commonwealth,* 400 Pa. 584, 163 A.2d 80 (1976).  "Stipulated facts are binding upon the court as well as the parties."  *George v. Department of Transportation,* 70 Pa.Commonwealth Ct. 574, 577, 453 A.2d 717, 718 (1982), *citing Greenville Steel Car Co. v. Commonwealth,* 20 Pa.Commonwealth Ct. 385, 343 A.2d 79 (1975).  DOT's focus in asserting that the Board did not adhere to the

stipulation is upon the language "surface easement," while disregarding the words for *"highway purposes."* The stipulation, in light of the condemnation plan, defines the surface easement being for the accommodation of the seven piers for "highway purposes." Again, upon a review of the pertinent documents, we find that the Board did not fail to adhere to the stipulation, but viewed it in relation to the pertinent condemnation plans and the true intent of the parties.

The Commission argues that regardless of whether or not a surface easement was obtained by DOT, Brown's action is barred by laches.[7] DOT had acquired only a surface easement as to the piers, and since one may not grant a greater interest than one possesses, *Murrer v. American Oil Co.*, 241 Pa.Superior Ct. 120, 359 A.2d 817 (1976), we need not address the Commission's assertion of laches because the Commission could acquire only the interest that DOT possessed.

Accordingly, the Order of the Board of Property is hereby affirmed.

DOYLE, J., dissents.

### ORDER

AND NOW, this 14th day of May, 1990, the order of the Board of Property in the above-captioned matter is hereby affirmed.

---

7. The Board found that Brown's action was not barred by laches, but did not further discuss the Commission's asserted defense.